[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 29, 1993, the plaintiffs, Tek-Motive, Inc.; T.M. Friction Materials, Inc.; Angela Moalli and Ronald Moalli filed a nine count complaint against eight defendants, including: AFB, Inc.; Donal Braun; Roberto Wille; Jose Valle; Michigan Automotive Parts, Limited; Freno; SA, Juan Benavides; and Herbert Ruskin. The plaintiffs, Angela and Ronald Moalli, are the principals of T.M. Materials, Inc., a corporation organized under the laws of Connecticut and formerly known as Tek-Motive, Inc. (both corporations hereinafter referred to collectively as "TM"). The plaintiffs allege that the defendants engaged in a series of actions that enabled them to wrest the business records, confidential files, formulae, data, and ultimately the customer base, away from the plaintiffs, causing great financial harm to the plaintiffs. The plaintiffs further allege that the defendants' actions constitute an unfair trade practice under Connecticut law.
Specifically, the plaintiffs allege that AFB, Inc. ("AFB") is a corporation owned or controlled by the defendants Valle, Benavides, Wille and Braun. The plaintiffs allege that AFB was established by the defendant Wille while he was employed by TM for the purpose of converting the plaintiffs' confidential information and customer base. The plaintiffs claim that Wille became the principal of AFB while still employed by TM and while the owner of between 10% — 49% of the stock of TM. The plaintiffs further allege that, at this time, Wille engaged the defendant Braun, another TM employee, to aid in soliciting TM customers to cancel orders with TM and replace them with AFB.
The plaintiffs allege that the defendants, in pursuance of their objective of converting TM customers to the benefit of AFB, conspired with the defendant Freno, SA ("Frenosa"), the plaintiffs' major supplier, to eliminate supplier product to the plaintiffs. CT Page 9740
The plaintiffs allege that the defendant Valle is the principal stockholder of Frenosa, the father-in-law of Wille, and that it was by his request that the plaintiffs agreed to employ Wille. The plaintiffs allege that Valle owns at least 49% of the TM shares and consulted with the Moallis in all major decisions regarding the operations of TM. The plaintiffs further allege that the defendant Benavides is the General Manager of Frenosa.
With respect to the defendant Michigan Automotive Parts, Limited ("MAP"), the plaintiffs allege that this corporation is run by the defendant Wille and began as a purchasing agent for the defendant Frenosa. The plaintiffs Angela and Ronald Moalli were formerly employed by MAP. The plaintiffs allege that because MAP was privy to the operations of TM, it was able to, and did, convert confidential TM information.
With respect to the defendant Ruskin, the plaintiffs allege that he is an attorney who caused AFB to be formed in Delaware and to qualify to do business in Connecticut. The plaintiffs further allege that Ruskin was aware of the purpose for which AFB was formed and aided the defendants in their endeavor to usurp the North American market from TM.
The defendant AFB appeared on July 15, 1993, and on August 6, 1993 filed a motion to dismiss the complaint as against it on the ground that service of process was improper pursuant to General Statutes 52-57 in that service was attempted at the offices of AFB on an individual who was allegedly not in charge of the office at that time. A memorandum of law and the supporting affidavit of Cathy Sherman, employee of AFB, was filed along with the motion to dismiss. The plaintiffs have filed a memorandum of law in opposition to the motion to dismiss along with the affidavit of Sheriff Charles Valentino.
The defendant Valle appeared on July 13, 1993, and on August 11, 1993 filed a motion to dismiss the complaint as against him because of improper service of process pursuant to General Statutes52-59b(c) and on the ground that the court lacks personal jurisdiction under both the Connecticut long-arm statute, General Statutes 52-59b, and the minimum contacts standard as set forth in the controlling case law. A memorandum of law and supporting documentation, including the affidavit of Valle, were filed along with the motion to dismiss. The plaintiffs have filed a memorandum in opposition to the motion to dismiss and a transcript of a recent deposition of Valle in support of their objection. CT Page 9741
The defendant Ruskin appeared on July 13, 1993, and on August 6, 1993 filed a motion to dismiss the complaint as against him on the ground that service of process was improper pursuant to General Statutes 52-59b(c). A memorandum of law and the affidavit of Ruskin were filed along with the motion to dismiss. The plaintiffs have filed a memorandum of law in opposition to this motion to dismiss.
These three motions to dismiss came before the court at short calendar on August 30, 1993, at which time the court conducted a full evidentiary hearing. At this hearing, numerous exhibits were entered into evidence. Sheriff Valentino testified for the plaintiffs, and Sherman testified for the defendant AFB regarding its motion to dismiss. With respect to Valle's motion to dismiss, Valle testified on his own behalf and Ronald and Angela Moalli testified for the plaintiffs. With respect to the motion to Ruskin's motion to dismiss, Ruskin testified on his own behalf and Angela Moalli testified for the plaintiffs.
Pursuant to Practice Book 143, "[i]f an adverse party objects to . . . [a motion to dismiss] . . . he should, at least five days before the motion is to be considered on the short calendar, file and serve . . . a memorandum of law and, where appropriate, supporting affidavits as to facts not apparent on the record." Practice Book the present case, the plaintiffs filed their memoranda on August 27, 1993, three days prior to the date the motions were considered on the short calendar.
It is within the courts discretion to grant the motions to dismiss based on the plaintiffs' failure to file their memoranda at least five days prior to the short calendar session. It should be noted, however, that a 1989 amendment deleted a provision of Practice Book 143 which deemed an adverse party who did not timely file an opposing memorandum to have consented to the granting of the motion. No cases have been found subsequent to this amendment in which a motion to dismiss was granted solely upon a failure to file a timely opposing memorandum.
"A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court." Zizka v. Water Pollution Control Authority of Windham, 195 Conn. 682, 687,490 A.2d 509 (1985). "The motion to dismiss shall be used to assert . . . (5) insufficiency of service of process." Practice Book Facts showing the service of process in time, form, and CT Page 9742 manner sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction over the person." Castro v. Viera, 207 Conn. 422, 433-34, 541 A.2d 1216 (1988). "Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction." Hyde v. Richard, 145 Conn. 24, 25, 138 A.2d 527 (1958).
A. AFB, Inc.
The plaintiff argues that the motion to dismiss should be denied for two reasons. First, the plaintiff argues, the general appearance filed by the defendant's attorney on July 13, 1993 gave the defendant actual notice and thus constituted a waiver of any defect in the service of process. Second, the plaintiff argues that Sherman was in charge of the office and therefore, AFB was properly served pursuant to General Statutes 52-57(c).
The defendant, in support of its motion to dismiss, argues that service of process was insufficient pursuant to General Statutes 52-57(c). The defendant maintains that Sherman was not a person who could properly be served on behalf of AFB.
"Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days after its general appearance." Practice Book 142. The defendant, AFB, filed a general appearance on July 13, 1993. It filed its motion to dismiss on August 6, 1993, less than thirty days after its general appearance. The defendant complied with the timing requirements of Practice Book 142, and therefore did not waive any jurisdictional defects.
"When the particular officers or employees of a corporation upon whom service may be made are designated, service upon any other person as a representative of the corporation is inadequate to confer jurisdiction upon the court to which the process is returnable." Hyde v. Richard, supra, 25. "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction. Standard Tallow Corporation v. Jowdy,190 Conn. 48, 54, 459 A.2d 503 (1983). In the present case, the burden of proof is on the plaintiff to establish that by delivering process to Sherman, AFB was properly served pursuant to General Statutes 52-57 (c). CT Page 9743
General Statutes 52-57, concerning manner of service of process, provides in relevant part:
 (c) actions against a private corporation, service of process shall be made either on the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located.
(Emphasis added.) General Statutes 52-57(c).
Nelson v. Stop Shop Cos., 25 Conn. App. 637, 596 A.2d 4
(1991), concerned whether the employee served was a "general or managing agent or manager of the defendant corporation" within the definition of General Statutes 52-57(c). The court determined that "the plaintiff's failure to offer any evidence on the duties of the person served is fatal to her opposition to the defendant's motion to dismiss based on defective service." Id., 641. In the present case, the plaintiff has not offered any evidence concerning Sherman's duties.
The dispositive issue in deciding this motion to dismiss is whether Sherman was, at the time of service, on June 17, 1993, in charge of the West Haven office of AFB. The court must make this factual determination after considering the documentary evidence submitted by both parties, along with the testimony proffered at the evidentiary hearing held on August 30, 1993.
The defendant has filed Sherman's sworn affidavit along with its memorandum in support of the motion to dismiss. In her affidavit, Sherman states that she was a receptionist and clerical employee of AFB on the date of service. She further states that she was not in charge of the offices of AFB in West Haven, Connecticut. Sherman's oral testimony at the evidentiary hearing was consistent with her affidavit.
The plaintiff, in its memorandum of law in opposition to the CT Page 9744 motion to dismiss, argues that because Sherman was the only person in the office at the time of service of process, she was ipso facto in charge of the office at that time. The plaintiff has also submitted the sworn affidavit of Deputy Sheriff Charles Valentino. The Sheriff attests that he made service in the hands of Sherman who indicated she was the person authorized to accept service for and on behalf of AFB, Inc. The sheriff's testimony at the evidentiary hearing was consistent with this statement, although he testified that he did not recognize Sherman at the time of the evidentiary hearing.
The court must determine whether Sherman was in charge of the West Haven office of AFB, and not whether the sheriff believed that she was. Therefore, the sheriff's affidavit and testimony are probative only to the extent that they tend to prove Sherman was, in fact, the person in charge of AFB, and not to the extent that they merely indicate the sheriff's state of mind.
The court must weigh the conflicting evidence proffered in the form of sworn affidavits and oral testimony to determine if the plaintiff has met its burden of proving that Sherman was the person in charge of AFB's West Haven office such that service of process was proper pursuant to General Statutes 52-57. The evidence submitted leads this court to conclude process was served on the individual, in charge of the office of AFB, Inc., and therefore the motion to dismiss is denied.
B. Ruskin Valle
The plaintiffs argue that the motion to dismiss filed by Ruskin and Valle for insufficiency of service of process should be denied for two reasons. First, the plaintiffs argue, the general appearances filed by the defendants' attorney on July 13, 1993 gave these defendants actual notice and thus constituted a waiver of any defect in the service of process. Second, the plaintiffs argue that service of process was proper pursuant to General Statutes52-59b(c) because the addresses to which the complaints were served were the last addresses which could have been known to the plaintiffs.
The defendants, in support of their motions to dismiss, argue that service of process was insufficient pursuant to General Statutes 52-596(c). The defendants maintain that service of process was attempted upon them at addresses that were not and never have been their abodes. Furthermore, the defendants assert CT Page 9745 that they have not maintained their offices at those addresses for over one year.
"Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days after its general appearance." Practice Book 142. Both defendants, Valle and Ruskin, filed a general appearance on July 13, 1993. Ruskin filed his motion to dismiss on August 6, 1993, less than thirty days after his general appearance. Valle filed his motion to dismiss on August 11, 1993, also within thirty days after his general appearance. Both defendants complied with the timing requirements of Practice Book 142, and therefore did not waive any jurisdictional defects.
Service of process on nonresidents is governed by General Statutes 52-59b, which provides in relevant part:
 (c) Any nonresident individual . . . over whom a court may exercise personal jurisdiction . . . shall be deemed to have appointed the secretary of state as its attorney and to have agreed that any process in any civil action brought against the nonresident individual . . . may be served upon the secretary of state and shall have the same validity as if served upon the nonresident. . . . The process shall be served by the officer to whom the same is directed upon the secretary by leaving with or at the office of the secretary, at least twelve days before the return day of such process, a true and attested copy thereof, and by sending to the defendant at his last-known address, by registered or certified mail, postage prepaid, a like true and attested copy with an endorsement thereon of the service upon the secretary. . . .
(Emphasis added.) General Statutes 52-59b(c).
Service of process on Ruskin was sufficient in the present case because 41 East 42nd Street, New York, New York was Ruskin's "last-known address" within the meaning of General Statutes52-59b(c). Likewise, service of process on Valle was sufficient because Mira Hores 895, Lima 18, Peru was Valle's "last known address." Service was sufficient in both cases because notice delivered to an individual's business address, rather than his residence, is adequate; and the aforementioned addresses were, in fact, Ruskin's and Valle's last known addresses. CT Page 9746
In Rohm Hass Co. v. Aries, 103 F.R.D. 541 (1984), a federal district court held that the Connecticut long arm statute requiring service of process to a nonresident at his last known address was satisfied when process was mailed to the defendant's business address. The court relied on Mullane v. Central Hanover Trust,339 U.S. 306, 94 L.Ed 865, 70 S.Ct. 652 (1949), for the proposition that due process requires only that "notice [be] reasonably calculated, under all the circumstances, to apprise [the] interested part[y] of the pendency of the action and afford [him] an opportunity to present [his] objections." Id., 314. The fact that notice is forwarded to an individual's business address rather than his or her home address should not affect the determination of whether General Statutes 52-59b(c) has been complied with.
 The requirement that . . . [service] be mailed to the defendant at his "last known address" does not mean the last address known to the plaintiff, but does mean the last address of the defendant so far as it is known, that is, by those who under the ordinary circumstances of life would know it.
D'Occhio v. Connecticut Real Estate Commission, 189 Conn. 162, 171
(1983). In D'Occhio, sending a copy of the complaint to the defendant's wife satisfied the "last known address" requirement. "Notice of this nature is adequate whether or not actually received by the addressee." Id., 172, quoting Hartley v. Vitiello,113 Conn. 74, 80, 154 A. 255 (1931).
In Hartley v. Vitiello, supra, the court explained the meaning of "last known address":
 Unless the defendant has departed for parts unknown, it means his actual address; if he has disappeared it means his last address so far as it is reasonably possible to ascertain it. This address the plaintiff must learn at his peril and only if the copy is mailed to it is there a compliance with the statute.
Id., 80.
Ruskin asserted in his memorandum of law and at oral argument that he moved from this office two years ago and therefore he never received service of process. The plaintiffs argued in their memorandum of law and at oral argument that 41 East 42nd Street CT Page 9747 was, to the best of their knowledge based on correspondence received from Mr. Ruskin, Mr. Ruskin's address.
Valle asserted in his memorandum of law and at oral argument that that address was his former office address, but that he has not maintained his office at that address for over one year. Valle further asserts that the plaintiffs had available to them his current address. He has attached a copy of the transcript from a hearing before this court on April 26, 1993 in which Valle indicates his address as Avenida, Argentina 1375, Lima Peru. (Defendant's Exhibit "A").
The plaintiffs asserted in their memorandum of law and at oral argument that service of process was made upon Valle at the address known to the plaintiffs as being his office where Valle normally transacts business and would ordinarily receive notice; the last address that could reasonably be known to the plaintiffs.
The plaintiffs further assert that the defendant's objection to the process being served at Mira Hores rather than his current address is without merit. The plaintiffs argue that the Peruvian Postal System is so dissimilar to the United States system that postal deliveries are made by name rather than exact address. For example, the plaintiffs argue, mail delivered to "Jose Valle, Lima, Peru" would be delivered to Valle wherever he may normally be within the city.
This court concludes the defendants were served at their "last known address" based on the allegations made in the parties' memorandums of law and at oral argument. The defendants were properly served at their "last known addresses", therefore, the motions to dismiss filed by Ruskin and Valle are denied.
The motion to dismiss shall be used to assert . . . (2) lack of jurisdiction over the person. . . . Practice Book 143. The motion to dismiss admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. Barde v. Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988).
"[A]ll assertions of state-court jurisdiction must be resolved according to the standards set forth in International Shoe [Co. v. Washington, 326 U.S. 310, 90 L.Ed 95, 66 S.Ct. 154 (1945)] and its progeny." Hodge v. Hodge, 178 Conn. 308, 318, 422 A.2d 280 (1979), quoting Shaffer v. Heitner, 433 U.S. 186, 212, 53 L.Ed.2d 683,97 S.Ct. 2569 (1979). Those standards require that "in order to CT Page 9748 subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional, notions of fair play and substantial justice." International Shoe Co. v. Washington, supra, 316 (1945).
"If the defendant challenges the court's jurisdiction, it is then incumbent on the plaintiff to prove facts establishing the requisite minimum contacts." Standard Tallow Corporation v. Jowdy,190 Conn. 48, 53, 459 A.2d 503 (1983). "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Id., 54.
Valle
This court determines that service of process on Jose Valle was proper in the present case, and this court must also consider whether the action against Valle should be dismissed because the court lacks personal jurisdiction over this defendant. The defendant argues that he is not within the reach of the Connecticut long-arm statute, General Statutes 52-59b, and that the exercise of in personam jurisdiction over him would violate constitutional principles of due process.
The plaintiffs argue that Valle is within the reach of the Connecticut long-arm statute. The plaintiffs argue that Valle has continually transacted business within Connecticut, has committed tortious acts within Connecticut, and has committed tortious acts outside this state causing injury to the plaintiffs within Connecticut. The plaintiffs argue that these acts bring the defendant within the reach of the Connecticut long-arm statute and also satisfy the constitutional requirements of due process.
To determine whether a Connecticut court has jurisdiction over a foreign defendant a two-tiered analysis is required. Lombard Brothers, Inc. v. General Asset Management Co., 190 Conn. 245, 250460 A.2d 481 (1983). The court must first inquire whether the long-arm statute authorizes the exercise of jurisdiction under the particular facts of the case. Frazer v. McGowan, 198 Conn. 243
246, 502 A.2d 905 (1986). If the statute is applicable, the court then reaches the question of whether it would offend due process to assert jurisdiction. Id. Only if personal jurisdiction has attached under state law does the court reach the constitutional CT Page 9749 question of whether due process is offended thereby. Lombard Brothers, Inc. v. General Asset Management Co., supra, 250.
The Connecticut Long Arm Statute, General Statutes 52-59b
provides the ways to obtain jurisdiction over nonresidents. To the extent relied upon by the plaintiffs, 52-59b provides as follows:
 (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state . . .; or (3) commits a tortious act outside the state causing injury to person or property within the state . . . if he (A) regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .
General Statutes 52-59b(a).
One basis of jurisdiction alleged by the plaintiffs is52-59b(a)(1) which extends jurisdiction over an individual who "transacts any business in the state." "The General Statutes do not define what the phrase `transacts any business' means in the context of 52-59b." Zartolas v. Nisenfeld, 184 Conn. 471, 475,440 A.2d 179 (1981). The court in Zartolas found that in enacting52-59b the legislature used New York Civil Practice Law 302 as model so that Connecticut courts can look to New York law in interpreting the statute. Id. The court in Zartolas examined New York law and construed "the term `transacts any business' to embrace a single purposeful business transaction." Id. To determine whether a plaintiff's cause of action arose from the defendant's transaction of business within the state a court must balance considerations of public policy, common sense, and the chronology of the relevant factors. Id., 473.
The performance of an act in the forum state is not sufficient for jurisdiction unless the cause of action arises from that act. American Radio Association v. A.S. Adell Company, 296 N.Y.S. 21, 23 (1968). Therefore, a non-domiciliary is subject to jurisdiction under the long-arm statute if he engaged in some purposeful CT Page 9750 activity within the state and there is a "substantial relationship" between the activity and the plaintiff's cause of action. McGowan v. Smith, 437 N.Y.S.2d 643, 645, 52 N.Y.2d 268, 419 N.E.2d 321
(1981).
In examining Valle's activities, the court must look to his personal contacts with the state of Connecticut and not to the contacts made on behalf of any corporate entity of which he was an officer or controlling shareholder. In N.E. Contract Packers v. Beverage Services, 7 CSCR 828 (June 18, 1992, Gaffney, J.) where the court found that the defendant's visits to Connecticut were in his capacity as a corporate officer and for the purpose of negotiating an agreement between his company and the plaintiff, it held that "[u]nder such circumstances in personam jurisdiction over a corporate director does not stem in symbiotic-fashion from jurisdiction over the corporation. It is the director's own personal contacts with the forum state which control." Id., 829, citing Mozes v. Welch, 638 F. Sup. 215, 223 (D. Conn. 1986). See also Corporation for Independent Living v. Charter Oak Associates, Superior Court, judicial district of Tolland at Rockville, Docket No. 48503 (April 10, 1992) (construing 52-59b(a)(1) to require proof that a non-resident transacted business in Connecticut in an individual capacity and not merely on behalf of a corporate employer).
The plaintiffs argue in their memorandum in opposition to the motion to dismiss that Valle has, for at least the last ten years, continually transacted business within Connecticut on his own behalf and on behalf of companies owned or controlled by him. The plaintiffs have submitted a copy of Valle's deposition to support this claim. (Plaintiffs' Exhibit #1). In this deposition, Valle admits having come to Connecticut frequently over the last ten years to visit the Moallis on a personal level and to discuss the business relationship between Frenosa and TM.
To the extent the plaintiffs rely on Valle's visits to discuss the business relationship between Frenosa and TM, the plaintiffs have not met their burden of establishing a basis for the exercise of in personam jurisdiction. The plaintiffs allege in their complaint that Valle is the principal stockholder of Frenosa. Valle, himself, testified at the evidentiary hearing that he is the Chairman of the Board of Frenosa. In Hagar v. Zaidman, 797 F. Sup. 132
(D. Conn. 1992), personal jurisdiction could not be asserted over an officer of the corporation based on that officer's transaction of business in Connecticut, where the officer did not CT Page 9751 transact business other than through the corporation. Id., 137. In the present case, the plaintiffs fail to make any allegations to indicate that Valle transacted business on his own behalf rather than on behalf of Frenosa during the course of any of his visits to Connecticut.
A review of the relevant case law will facilitate a determination of whether Mr. Valle "transacted business" in an individual capacity within the meaning of General Statutes 52-59b(a)(1). In Computer Assistance, Inc. v. Morris, 564 F. Sup. 1054,1059 (D. Conn. 1983), the court found that General Statutes52-59b may be applied to a non-resident defendant who had negotiated and executed his employment agreement in Connecticut with the plaintiff, who later brought suit against the defendant based on breach of that agreement. In Hart, Nininger Campbell Associates, Inc. v. Rogers, 16 Conn. App. 619, 625 (1988), the appellate court upheld the trial court's finding of long-arm jurisdiction based upon the fact that the defendant: (1) came to Connecticut to negotiate and sign his employment contract; (2) attended quarterly business meetings in Connecticut; and (3) had continuous telephone contacts and filed weekly activity reports with the Connecticut office.
In Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951
(2d Cir. 1967), the court was considering the applicability of New York Civil Practice Law 302. The court found that the defendant corporation had, through its agents, purposefully entered the forum state and was amenable to personal jurisdiction based on the following facts: (1) a high level agent and officer of the defendant corporation made three separate trips to the forum state within a two month period to negotiate the contract involved in the suit in question; (2) the defendant corporation stood to derive considerable economic benefit from the three trips; and (3) the technical nature of the project required the meetings in order to negotiate the contract. Id., 956.
However, in Rosenblit v. Danaher, 206 Conn. 125, 141,537 A.2d 145 (1988), the court found that the non-resident defendant's presence at a single business meeting in Connecticut was insufficient to constitute a single purposeful business transaction as required by Zartolas, supra, and Computer Assistance Inc., supra. In holding that the plaintiffs had not sustained their burden of proof by establishing facts which demonstrated a basis for personal jurisdiction over the defendant, the court emphasized the following factual findings: (1) the plaintiffs hired the CT Page 9752 defendant in Massachusetts; (2) to handle an action in Massachusetts; (3) dealing with events which occurred in Massachusetts; (4) brought in the United States District Court in Massachusetts; and (5) dealing with real property located in Massachusetts. Id., 140.
In the present case, the plaintiffs allege in their complaint that TM was formed in order to establish a market for Frenosa products in the United States. The plaintiffs further allege that Valle advanced sums of money to TM in order to facilitate TM's marketing efforts of Frenosa goods. The plaintiffs allege that, in 1986, Valle converted this financial backing into shares of stock, and that he now owns at least 49% of the outstanding shares of TM. This allegation is disputed by the defendant. In his affidavit Valle states that a separate corporate entity, Geruntas Shipping Corporation, owns the stock.
The court must look to the complaint, the memorandums of law and the allegations made and evidence proffered at the evidentiary hearing to determine whether the plaintiffs have met their burden of presenting facts sufficient to establish that Valle engaged in some purposeful activity within Connecticut. The court should also look to Valle's contacts and determine if he purposefully entered Connecticut in an individual capacity rather than on behalf of a corporation in order to subject him to personal jurisdiction pursuant to General Statutes 52-59b(a)(1).
This court determines that the long-arm statute is applicable and therefor it must then determine whether it would offend due process to assert jurisdiction. Frazer v. McGowan, supra, 246. The plaintiff bears the burden of proving the assertion of jurisdiction is constitutionally permissible. Lombard Bros., Inc., v. General Asset Management Co., supra, 250.
"The Due Process clause is essentially one of fundamental fairness." Mozes v. Welch, supra, 224. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations." Burger King Corporation v. Rudzewicz, 471 U.S. 462, 85 L.Ed.2d 528, 105 S.Ct. 2174
(1985).
Minimum contacts must be present before a court can acquire in personam jurisdiction, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. CT Page 9753 United States Trust Co. v. Bohart, 197 Conn. 34, 38, 495 A.2d 1034
(1985); International Shoe v. Washington, supra. Even a single act having impact in and connection with the forum state can satisfy the minimum contacts test of International Shoe. McGee v. International Life Insurance Co., 355 U.S. 220, 222-23,2 L.Ed.2d 223, 78 S.Ct. 199 (1957).
The two touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. United States Trust Co. v. Bohart, supra, 41. "`[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably expect to be haled into court there.'" Id., quoting World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 297,62 L.Ed.2d 490, 100 S.Ct. 559 (1979).
"The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." United States Trust Co., v. Bohart, supra, citing Kulko v. California Superior Court,436 U.S. 84, 92, 56 L.Ed.2d 98 S.Ct. 1690 (1978). The court must look to the entire record and determine that it would have been unforeseeable and would be fundamentally unfair for Valle to be haled into court in Connecticut in order to grant his motion to dismiss based on a violation of due process.
The plaintiffs also argue that a Connecticut court may exercise personal jurisdiction pursuant to 52-59b(a)(2) because on numerous occasions Valle allegedly visited with the principals of AFB in order to wrest confidential information from the plaintiffs. However, no facts concerning meetings, discussions or any other actions that might be a basis for this claim were shown to have taken place in Connecticut. "Regardless of where the harm is suffered, the tort must be committed in Connecticut, and the defendant must be physically present within the state at the time of commission." N.E. Contract Packers v. Beverage Services,7 CSCR 828 (June 18, 1992, Gaffney, J.) (construing 52-59b(a)(2)).
It is the plaintiffs' burden to present facts sufficient to establish in personam jurisdiction over the defendant. Standard Tallow Corporation v. Jowdy, supra, 51-54. The plaintiffs have not demonstrated, as was their burden, that Valle is amenable to in personam jurisdiction pursuant to General Statutes 52-59b(a)(2).
The plaintiffs also argue that a Connecticut court may exercise personal jurisdiction over Valle pursuant to General CT Page 9754 Statutes 52-59b(a)(3) for committing a tortious act outside of Connecticut causing injury to the plaintiffs within this state. The plaintiffs allege that Valle, through personal contact or correspondence, aided and abetted AFB in tortious actions against the plaintiffs. The defendant denies this allegation.
When a court decides a jurisdictional question raised by a motion to dismiss, it must consider the allegations of the complaint in their most favorable light. Reynolds v. Soffer,183 Conn. 67, 68, 438 A.2d 1163 (1981). Viewing the evidence in this manner, the plaintiffs have alleged a concerted effort to wrest confidential information and usurp the plaintiffs' customer base. The plaintiffs do not allege with any degree of specificity, however, what tortious actions were committed by Valle that would bring him within the purview of General Statutes 52-59b(a)(3). The plaintiffs have not met their burden of showing that Valle is responsible for tortious acts outside of this state causing injury within Connecticut.
For the forgoing reasons the defendant Jose Valle's motion to dismiss for lack of personal jurisdiction is granted.
Howard F. Zoarski, Judge