PECHINEY CORPORATION *v.* ALAN A. CRYSTAL,
COMMISSIONER OF REVENUE SERVICES

ALUMAX, INC. *v.* ALAN A. CRYSTAL,
COMMISSIONER OF REVENUE SERVICES

SUPERIOR COURT            FILE NOS. 528927
TAX SESSION            528967

Memorandum filed January 13, 1994

*Day, Berry & Howard,* for the plaintiff in the first case.

*Robinson & Cole* and *Jones, Day, Reavis & Pogue,* pro hac vice, for the plaintiff in the second case.

*Richard K. Greenberg* and *John G. Haines,* assistant attorneys general, with whom was *Richard Blumenthal,* attorney general, for the defendant in both cases.

BLUE, J. Our constitution, Alexander Hamilton observed two centuries ago, is "founded upon the total

or partial incorporation of a number of distinct sovereignties." A. Hamilton, "The Federalist" No. 82, reprinted in 2 The Debate on the Constitution (1993) p. 493. Such a union, he observed, "cannot fail to originate questions of intricacy and nicety." Id. One such recurrent question involves the jurisdiction of state courts to hear federal causes of action. The specific question presented here is whether this court has jurisdiction to hear a cause of action under 42 U.S.C. § 1983 that has been appended to a state tax appeal.

The taxpayers in the present actions have each filed an appeal from a decision of the commissioner of revenue services (commissioner) pursuant to General Statutes § 12-237. The allegations in the appeals are similar. The taxpayers contend that they incurred net losses in the taxable years in question and filed combined corporate business tax returns under General Statutes § 12-223a properly reflecting those losses. They allege that the commissioner erroneously reallocated those losses to subsidiary corporations. They further contend that the commissioner's action, in addition to being statutorily erroneous, violated a number of provisions of the state and federal constitutions, including the commerce, due process and equal protection clauses. These allegations are set forth in a number of separate counts. Each appeal then adds a final count that is the subject of the motions presented here. Each final count alleges that the commissioner acted under color of state law and that his actions violated 42 U.S.C. § 1983 by depriving the taxpayers of rights, privileges and immunities secured by the constitution of the United States. In their prayers for relief, the taxpayers ask that the assessments be set aside, that attorney's fees be awarded, and that this court grant them such other relief as may be proper and equitable. Because the disputed taxes have not yet been paid, the taxpayers do not ask for monetary relief. Rather they ask for a

declaratory ruling that they are not obliged to pay the taxes in question.

The commssioner has filed a motion to dismiss the final count in each case. (None of the earlier counts are challenged at this stage.) His argument has two components. He argues first that an action under § 1983 cannot be maintained to challenge the assessment of a state tax in state court. He argues next that, while acting in his official capacity he is not subject to a suit in state court for money damages under § 1983. These arguments will be considered in turn.

Before turning to the merits, however, it is important to note that the motions to dismiss rely entirely upon the allegations set forth in the taxpayers' appeals and do not seek to introduce any additional facts outside of the record. See Practice Book § 143. The commissioner expressly declined to submit evidence in support of his claims. Under these circumstances, the truth of the taxpayers' factual allegations must be assumed. "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a course of action that should be heard by the court." (Emphasis in original.) *Baskin's Appeal from Probate,* 194 Conn. 635, 640, 484 A.2d 934 (1984). Thus, the question presented here is whether the taxpayers as a matter of law and fact can possibly state a cause of action under 42 U.S.C. § 1983 that should be heard by the court.

I

THE CHALLENGE TO THE STATE TAX

Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." "A broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of '*any* rights, privileges, or immunities secured by the Constitution and laws.' (Emphasis added.)" *Dennis* v. *Higgins,* 498 U.S. 439, 443, 14 S. Ct. 865, 112 L. Ed. 2d 969 (1991). Just as the statutory text sets forth no limitation on the types of constitutional claims that may be asserted in the cause of action it provides, it does not limit the judicial fora in which such an action may be pursued. "State courts have concurrent jurisdiction with federal courts over § 1983 claims. *Maine* v. *Thibou-tot,* 448 U.S. 1, 3 n.1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) . . . ." (Citation omitted.) *Zizka* v. *Water Pollution Control Authority,* 195 Conn. 682, 687, 490 A.2d 509 (1985); see *Arkansas Writers' Project, Inc.* v. *Ragland,* 481 U.S. 221, 234, 107 S. Ct. 1722, 95 L. Ed. 2d 209 (1987); *Martinez* v. *California,* 444 U.S. 277, 283 n.7, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980).

While there is no doubt in view of the precedent just cited that state courts have jurisdiction over § 1983 claims generally, whether state courts can or must assume jurisdiction over challenges to the assessment of the state taxes under § 1983 "is not entirely clear." *Arkansas Writers' Project, Inc.* v. *Ragland,* supra, 481 U.S. 234 n.7. The doubts that have arisen have focused on three considerations: (1) the limitations, if any, imposed by the Tax Injunction Act of 1937, 28 U.S.C. § 1341; (2) the limitations, if any, imposed by the existence of a state appellate remedy, in this instance § 12-237, which allows appeals of corporation business tax determinations to be taken to this court; and (3) (in Connecticut) the preclusive effect (if any) of the state

Supreme Court's 1985 decision in *Zizka*. These considerations must be analyzed in turn.

First, 28 U.S.C. § 1341 provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." On its face, § 1341 applies only to the federal district courts. "The Tax Injunction Act embodied Congress' decision to transfer jurisdiction over a class of substantive federal claims from the federal district courts to the state courts . . . ." *Rosewell* v. *LaSalle National Bank*, 450 U.S. 503, 515 n.19, 101 S. Ct. 1221, 67 L. Ed. 2d 464 (1981). Because § 1341 "is rooted in principles of federalism," our Supreme Court held in *Zizka* that that statute "does not deprive state courts of all jurisdiction to hear § 1983 challenges to state taxes." *Zizka* v. *Water Pollution Control Authority*, supra, 195 Conn. 689–90.

The commissioner does not argue that § 1341 in and of itself deprives this court of jurisdiction to hear the taxpayers' § 1983 claims. His argument rather is one of inference and balance. Because the federal courts cannot hear § 1983 actions of this character, it would be, in his estimation, anomalous for the state courts to hear such actions and thus, at least in this regard, to have a jurisdiction superior to that of the federal courts.

This argument misapprehends the basic structure of our judicial system. "[F]ederal courts . . . are courts of limited jurisdiction marked out by Congress." *Aldinger* v. *Howard*, 427 U.S. 1, 15, 96 S. Ct. 2413, 49 L. Ed. 2d 276 (1976). State superior courts, in contrast, are courts of general jurisdiction. In Connecticut, as in most states, "[w]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged."

*Demar* v. *Open Space & Conservation Commission,* 211 Conn. 416, 425, 559 A.2d 1103 (1989); see generally 13 Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2d Ed. 1984) § 3522.

In a judicial system characterized by this architecture, it is not at all anomalous for state courts to have jurisdiction over matters that federal courts cannot lawfully adjudicate. Domestic relations matters are an obvious example. See *Ankenbrandt* v. *Richards,* 504 U.S. 689, 112 S. Ct. 2206, 2215, 119 L. Ed. 2d 468 (1992). State tax appeals are another. There are numerous " 'special reasons justifying the policy of federal noninterference with state tax collection . . . .'" *Fair Assessment in Real Estate Assn., Inc.* v. *McNary,* 454 U.S. 100, 108 n.6, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981), quoting *Perez* v. *Ledesma,* 401 U.S. 82, 127–28 n.17, 91 S. Ct. 674, 27 L. Ed. 2d 701 (1971) (Brennan, J., concurring and dissenting). These concerns of comity, however, in no way foreclose state courts from hearing § 1983 actions in conjunction with state tax appeals. Neither the letter nor spirit of § 1341 are violated by the existence of such state court jurisdiction. This jurisdiction, in fact, fully implements the policies of *both* § 1983 (i.e., the vindication of civil rights) and § 1341 (i.e., the noninterference of federal courts in state tax matters) in a way that federal jurisdiction does not.

Second, § 12-237 unquestionably provides an appellate remedy for taxpayers aggrieved by the commissioner's corporation business tax determinations. Moreover, constitutional as well as statutory claims may be raised in § 12-237 appeals. If, for example, the commissioner's determination in this case indeed violated the commerce clause, this issue could be raised and decided in a § 12-237 appeal in the absence of any claim asserted under § 1983. Both parties agree that there is no substantive constitutional claim within the

ambit of § 1983 that cannot be independently raised in an appeal under § 12-237.

This most emphatically does *not* mean, however, that the existence of § 12-237 preempts the field or that this issue is much ado about nothing. This is the case even if § 12-237 is "a plain, speedy and efficient remedy" of the sort contemplated by § 1341. Cf. *Zizka* v. *Water Pollution Control Authority,* supra, 195 Conn. 690 (holding General Statutes § 7-250 to be, for federal purposes, a plain, speedy and efficient remedy). On the contrary, a great deal rides on this issue, for attorney's fees are involved. This, at bottom, is what the fight is all about. The prevailing party in a § 12-237 appeal is not entitled to an award of attorney's fees. "[A]ttorney's fees . . . are not allowed to the successful party absent a contractual or statutory exception"; *Marsh, Day & Calhoun* v. *Solomon,* 204 Conn. 639, 652, 529 A.2d 702 (1987); and no contractual or state statutory provision for the allowance of attorney's fees exists in the context of a Connecticut state tax appeal. In contrast, 42 U.S.C. § 1988 (b) permits the court, in its discretion, to allow the prevailing party in a § 1983 action "a reasonable attorney's fee as part of the costs."

"The Attorney's Fees Awards Act was enacted in reaction to *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)." *Culebras Enterprises Corp.* v. *Rivera Rios,* 660 F. Sup. 540, 545 (D. P. R. 1987), vacated on other grounds, 846 F.2d 94 (1st Cir. 1988). *Alyeska* had held that the traditional American rule prohibiting fee shifting to losing parties could be avoided only by a specific statutory exception on the part of Congress. Section 1988 was intended to provide "the specific authorization required by the Court in *Alyeska* . . . ." S. Rep. No. 94-1011, 94th Cong., 2d Sess. 4, reprinted in 1976 U.S. Code Cong. Admin. News 5908, 5912. "The history of the Civil Rights Attorney's Fees

Awards Act indicates as clearly as a legislative history can that the purpose of the statute (despite its neutral wording) was to encourage meritorious civil rights litigation by allowing prevailing plaintiffs to obtain an award of attorney's fees almost as a matter of course but prevailing defendants only if the suit was frivolous." *Bittner* v. *Sadoff & Rudoy Industries,* 728 F.2d 820, 829 (7th Cir. 1984). As the Supreme Court has cogently stated, "Congress was interested in ensuring the effective prosecution of meritorious claims." *Kay* v. *Ehrler,* 499 U.S. 432, 437, 111 S. Ct. 1435, 113 L. Ed. 2d 48 (1991).

The congressional purpose in enacting § 1988 is important because citizens who are unconstitutionally taxed by the state are subjected to a violation of their constitutional rights. As long as these taxpayers assert their rights in state court, there is no policy reason not to encourage their civil rights litigation (if that litigation is meritorious) to the same degree that other civil rights litigation is encouraged. Economically, such an application of the civil rights laws should provide an additional incentive for the state to comply with the commands of the constitution. Moreover, in the absence of a provision for attorney's fees, the state could more easily extract small sums unconstitutionally from its taxpayers. A taxpayer subjected to an unconstitutional tax of a few dollars would be better off paying it than incurring the necessary legal fees to challenge it. See W. Taylor, note, "Section 1983 in State Court: A Remedy for Unconstitutional State Taxation," 95 Yale L.J. 414, 415–16 (1985). Section 1988 provides a litigation incentive for taxpayers faced with unconstitutional tax assessments regardless of the economic resources of those parties. See *Gore* v. *Turner,* 563 F.2d 159, 164 (5th Cir. 1977).

The fact that the § 1983 action here is obviously brought with the recovery of attorney's fees in mind

does not make it illegitimate. The Supreme Court has construed § 1988 to preclude the bringing of a separate action seeking "not to enforce any of the civil rights laws listed in § 1988, but solely to recover attorney's fees." *North Carolina Dept. of Transportation* v. *Crest Street Community Council, Inc.,* 479 U.S. 6, 7, 107 S. Ct. 336, 93 L. Ed. 2d 188 (1986). That case, however, involved a situation very different from the one presented here. The respondents in *Crest Street* (the plaintiffs at trial) prevailed at the administrative level and subsequently filed an action seeking attorney's fees alone. The Supreme Court found it "entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court." Id., 14. The taxpayers here have found it necessary to file complaints in court. Because their complaints seek to enforce one of the civil rights laws listed in § 1988—viz. § 1983—*Crest Street* does not preclude their actions.

The taxpayers' use of § 1983 in these actions finds a closer analogy in the frequent addition of claims based on the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; to complaints alleging a variety of other legal violations for the sole practical purpose of collecting attorney's fees. The Connecticut Supreme Court has held, for example, that violations of the Federal Truth in Lending Act and of General Statutes § 36-224*l* (limiting charges on secondary mortgage loans) are unfair trade practices in violation of CUTPA. *Cheshire Mortgage Service, Inc.* v. *Montes,* 223 Conn. 80, 113, 612 A.2d 1130 (1992). A plaintiff who can establish a violation of either of these statutes does not need to allege or prove a violation of CUTPA in order to obtain substantive relief. If the plaintiff's lawyer is worth her salt, however, the complaint will additionally allege a CUTPA violation, because General Statutes § 42-110g (d) allows the court

to award reasonable attorney's fees to the successful plaintiff. It has not been thought that the existence of the other statutes relied upon in any way precludes the CUTPA claim. *Cheshire Mortgage Service, Inc.* v. *Montes,* supra, 223 Conn. 105, holds, quite to the contrary, that the CUTPA claim is established precisely *because* of those other legal violations. Section 1983, which is designed to protect the fundamental civil rights of citizens, should be construed in a similarly broad way. *Dennis* v. *Higgins,* supra, 498 U.S. 443. Access to that statute's protections should not be barred because the same substantive relief can be obtained by proceeding under another statute. For these reasons, I conclude that the existence of § 12-237 imposes no limitation on this court's jurisdiction to consider a § 1983 claim appended to a state tax appeal.

Third, the decision of our Supreme Court in *Zizka* in no way precludes this court's jurisdiction to hear the § 1983 claims of the taxpayers here. This conclusion follows from a structural analysis of the respective cases.

*Zizka* involved a one count complaint for declaratory and injunctive relief and monetary damages filed in the Superior Court. The sole cause of action was based on § 1983. The trial court dismissed the action and, on appeal, the Supreme Court found no error. The Supreme Court acknowledged that "[s]tate courts have concurrent jurisdiction with federal courts over § 1983 claims"; *Zizka* v. *Water Pollution Control Authority,* supra, 195 Conn. 687; and that "§ 1341 does not deprive state courts of all jurisdiction to hear § 1983 challenges to state taxes." Id., 689–90. The court nevertheless determined that it lacked jurisdiction to entertain the action before it. The central part of its reasoning was as follows: "Although § 1341 does not operate as a jurisdictional barrier in state courts, it nonetheless points the way to the proper standard by which state tax chal-

lenges should be measured. In a § 1983 suit seeking relief from the collection of state taxes, we may impose limitations that, like those of § 1341, inquire into whether the claimants have been afforded a statutory remedy that is 'plain, speedy and efficient.' The federal court has held that § 7-250 is, for federal purposes, a plain, speedy and efficient remedy under § 1341; *Group Assisting Sewer* v. *Ansonia,* [488 F. Sup. 45, 48 (D. Conn. 1978)]; we likewise conclude that § 7-250 furnishes a remedy that forecloses the plaintiffs' § 1983 claims in this action in state court. Since the General Assembly has fashioned an exclusive adequate remedial system for challenging excessive sewer assessments; *Vaill* v. *Sewer Commission,* [168 Conn. 514, 519, 362 A.2d 885 (1975)]; we see no need to subject state tax collectors to state actions brought under § 1983. See *Backus* v. *Chilivis,* 236 Ga. 500, 505, 224 S.E.2d 370 (1976). The bringing of a § 1983 action under these circumstances raises a jurisdictional question. *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979)." *Zizka* v. *Water Pollution Control Authority,* supra, 690.

The authorities cited by *Zizka* are of considerable interest. *Backus* v. *Chilivis,* supra, 236 Ga. 500, was a class action challenging the validity of a Georgia county's ad valorem tax digest. The Supreme Court of Georgia dismissed a count of the action brought under § 1983 on the ground that that action "circumvent[ed] recognized and established state procedures for equalizing tax assessments . . . ." Id., 505. Because the taxpayers had failed to avail themselves of "the expeditious and adequate statutory procedures already provided . . . a § 1983 action would unduly harass those charged with executing the tax laws." Id., 506.

Similarly, *Carpenter* v. *Planning & Zoning Commission,* supra, 176 Conn. 598, dismissed an action for an injunction seeking to restrain the defendant commis-

sioner from subdividing the plaintiffs' land. The court held that "when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." Id.

Subsequent Connecticut Supreme Court cases that have relied on *Zizka* have also involved plaintiffs who have bypassed their statutory remedies. In *Hartford* v. *Faith Center, Inc.,* 196 Conn. 487, 491, 493 A.2d 883 (1985), an action to collect personal property taxes allegedly due, the court affirmed the striking of a special defense that the assessments were unconstitutional on the ground that that challenge could have been, but was not, addressed in a statutory appeal. Similarly, *Owner-Operators Independent Drivers Assn. of America* v. *State,* 209 Conn. 679, 690 n.7, 553 A.2d 1104 (1989), dismissed an action seeking to enjoin the assessment of certain fuel decal fees, noting that the § 1983 claim in that action "should have [been] brought . . . before the commissioner, and if rejected . . . pursued . . . in the Superior Court."

All of these cases have involved taxpayers who have deliberately bypassed their statutory appellate remedies. The taxpayers here have done nothing of the sort. Rather, they have done precisely what the *Owner-Operators* decision implies they should have done—they have pursued their § 1983 actions in the same action as their tax appeals. Id. These cases, unlike *Backus* v. *Chivilis,* supra, 236 Ga. 506, do not "unduly harass those charged with executing the tax laws." The commissioner and his legal representative, the attorney general, would be compelled to appear in this court in the taxpayers' statutory tax appeals in any event. It is unlikely that the necessity of defending themselves against the § 1983 actions that accompany the appeal will significantly add to their labors. (The commissioner

has, of course, filed the present motions to dismiss, but that was a purely voluntary decision on his part.) This is a completely different situation from that presented in *Zizka* in which the defendants were compelled to respond to an action that wholly bypassed the available statutory appeal procedures. Because of these important structural differences, I conclude that *Zizka* does not preclude the § 1983 counts presented here. See *Harlan Sprague Dawley, Inc.* v. *Dept. of State Revenue,* 583 N.E.2d 214, 225 (Ind. 1991) (finding state court § 1983 jurisdiction where taxpayer "exhausted administrative remedies and did not circumvent state remedies").

Finally, although I have concluded that jurisdiction over the § 1983 claims presented here is not precluded by the Tax Injunction Act of 1937, § 12-237, or *Zizka,* I must still determine whether such jurisdiction is affirmatively appropriate. I conclude that it is.

The commissioner has phrased this issue as inquiring whether this court is *required* to entertain a § 1983 action over which it has concurrent jurisdiction. I do not agree that this is the question. The first question that must be asked is whether this court should *voluntarily* entertain such an action. Aside from the arguments discussed previously, the commissioner has presented no reason why such jurisdiction should not be voluntarily assumed. "Most state courts have freely accepted jurisdiction over section 1983 and have entertained claims brought under that section." W. Taylor, supra, 95 Yale L.J. 420. The arguments for mandatory jurisdiction are very strong, as the note just cited goes on to demonstrate, but those arguments need not be weighed by a court that views it as appropriate to assume voluntarily the jurisdiction conferred upon it by the federal government.

In taking this course, the court is faithful both to Connecticut jurisprudence and to the genius of our federal

system. It is, first, "a general principle of our law that the plaintiff has the right to enforce in our courts, any legal right of action which he may have, whether it arises under our own law or that of another jurisdiction." *Reilly* v. *Antonio Pepe Co.,* 108 Conn. 436, 445, 143 A. 568 (1928). This "broad view" is particularly compelling when the right of action involves "the enforcement of individual rights arising under the statutes of another state." *Lapinski* v. *Copacino,* 131 Conn. 119, 124, 38 A.2d 592 (1944).

This view is most compelling when the individual rights sought to be enforced arise under the constitution or laws of the federal government. The genius of our federal system, Alexander Hamilton observed in The Federalist, is that the state governments and the national government are not foreign jurisdictions but "kindred systems and . . . parts of *ONE WHOLE.*" (Emphasis in original.) A. Hamilton, "The Federalist," No. 82, reprinted in 2 The Debate on the Constitution (1993) p. 495. The United States Supreme Court recognized long ago that "[t]he laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty. . . . Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction." *Claflin* v. *Houseman,* 93 U.S. 130, 136, 23 L. Ed. 833 (1876). These principles have endured to this day. See *Howlett* v. *Rose,* 496 U.S. 356, 371, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990); *Felder* v. *Casey,* 487 U.S. 131, 153, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988); *Testa* v. *Katt,* 330 U.S. 386, 391, 67 S. Ct. 810, 91 L. Ed. 967 (1947).

Congress, by granting § 1983 jurisdiction to the state courts, "has made them instruments for interpreting the public policy of the nation in the matter at hand . . . ." *Lapinski* v. *Copacino,* supra, 131 Conn. 129. There is no reason to believe that the exercise of jurisdiction by this court in the present cases "will be attended by any appreciable inconvenience or confusion . . ." *Second Employers' Liability Cases,* 223 U.S. 1, 58, 32 S. Ct. 169, 56 L. Ed. 327 (1912). It is, consequently, appropriate to assume jurisdiction voluntarily.

## II

### The Commissioner Is Subject to These Actions

The commissioner's second contention focuses on the question of whether he is an appropriate defendant in this § 1983 action. Section 1983, on its face, imposes liability only on "person[s]" who deprive citizens of their constitutional rights. In *Will* v. *Michigan Dept. of State Police,* 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that officials of the state, while acting in their official capacities, are not "person[s]" within the meaning of § 1983 in the context of actions for monetary damages. The *Will* court carefully noted, however, that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' *Kentucky* v. *Graham,* 473 U.S. [159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *Ex parte Young,* 209 U.S. 123, [159–60, 28 S. Ct. 441, 52 L. Ed. 714] (1908)." *Will* v. *Michigan Dept. of State Police,* supra, 71 n.10.

This is not an action for monetary damages. As noted earlier, the taxpayers seek a declaratory ruling that they are not obliged to pay the taxes in question. *Will*

does not address the status of actions for declaratory relief. The distinction drawn in *Will,* however, is one between actions for prospective relief and actions for retroactive monetary relief. Because declaratory judgments can grant prospective relief, it follows that an action for this form of prospective relief should not be treated as an action against the state.

The eleventh amendment is not directly involved in this case since that amendment does not apply in state courts. *Will* v. *Michigan Dept. of State Police,* supra, 491 U.S. 63–64. Because *Will* draws heavily on eleventh amendment analogies, however, it is significant to note that the eleventh amendment has not been thought to preclude federal court actions against state officials for declaratory relief. See, e.g., *Farid* v. *Smith,* 850 F.2d 917, 924 (2d Cir. 1988); *Galvin* v. *Lloyd,* 663 F. Supp. 1572, 1581 (D. Conn. 1987).

Both lines of cases—i.e., the construction of § 1983 in *Will* and in *Kentucky* v. *Graham,* supra, 473 U.S. 167, and the long line of cases construing the eleventh amendment—stem from the United States Supreme Court's celebrated ruling in *Ex parte Young,* supra, 209 U.S. 123. *Young* held that the federal courts have the power to restrain a state official "from taking any steps towards the enforcement of an unconstitutional enactment . . . ." Id., 159. The court reasoned that if the act to be enforced is unconstitutional, "the use of the name of the State to enforce [it] is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity." Id. Under these circumstances, the official has no "immunity from responsibility to the supreme authority of the United States." Id., 160.

The court in *Young* was keenly "interested in the practical workings of the courts of justice throughout the land, both Federal and state . . . ." Id., 142. The

practical effect of its ruling is to hold that state officials may be prospectively restrained from doing acts that they have "no legal right to do." Id., 159. This doctrine is "indispensable to the establishment of constitutional government and the rule of law." 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2d. Ed. 1988), § 4231, p. 568. To construe this broad and vital proposition so as to allow injunctive actions but prohibit declaratory actions seeking prospective relief would be to draw a wholly artificial distinction with no basis in either principle or practice. I conclude that a declaratory action for prospective relief should not be treated as an action against the state for purposes of § 1983.

The commissioner argues that, even though the § 1983 action against him is outwardly an action for declaratory relief, its "essence" is a suit for monetary damages. In making this argument he relies on *Edelman* v. *Jordan,* 415 U.S. 651, 668, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974), which held that the eleventh amendment bars the federal courts from issuing equitable orders requiring payment of state funds "not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation" for past violations. But while *Edelman,* by way of analogy, arguably limits the particular form of relief that can ultimately be granted in some cases (although the eleventh amendment itself does not apply in state courts), it is inappropriate to consider the exact nature of that limitation here. Because the taxes in dispute in these cases have not been paid, the question of retroactive compensation simply will not arise. The commissioner's pretrial motion to dismiss effectively argues that *no* relief can possibly be granted in the § 1983 action, and that argument simply does not comport with the applicable law.

The commissioner argues finally that an allowance of attorney's fees under § 1988 would so closely resemble monetary damages that such an award should not be permitted. Technically, this argument is also premature, since there is presently no "prevailing party" to whom attorney's fees may be awarded. It is appropriate to note, however, that this argument could not be viable under any circumstances. Attorney's fees are not "compensation." They are a congressionally authorized device for securing effective representation in meritorious civil rights litigation. Any contrary interpretation would eviscerate the Attorney's Fees Awards Act.

## III

### CONCLUSION

For the foregoing reasons, the motions to dismiss are denied.