[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 13, 1995
The amended complaint in this case, which involves the alleged "death coaching" of the plaintiffs' decedent by the named defendant, Lorraine Jalbert, is a massive affair, consisting of fifty-seven counts. The motion to strike now before me, however, attacks only four of these counts, and each of these counts is attacked in part only. Each of the counts about to be described is directed against state officials in both their official and personal capacities. On December 30, 1993, however, the Hon. Jerry Wagner granted a motion to dismiss each of these counts insofar as the counts are directed against the defendants in their official capacities. Consequently, the motion to strike now before me is concerned with these counts only insofar as they are directed against the defendants in their personal capacities.
Counts 45 and 47 are directed against Susan S. CT Page 941 Addiss ("Addiss"), Commissioner of the State Department of Health Services. Count 45 alleges recklessness and gross negligence in her licensing and supervision of other defendants. Count 47 alleges intentional infliction of emotional distress.
Counts 52 and 54 are directed against Stanley Peck ("Peck"), Director of Medical Quality Assurance for the State Department of Health Services. Count 52 alleges recklessness and gross negligence in his licensing and supervision of other defendants. Count 54 alleges intentional infliction of emotional distress.
The motion to strike these counts asserts three different arguments. First, the defendants claim that the plaintiffs have failed to allege that the defendants owed them a duty so as to establish a claim for gross negligence. Second, the defendants claim that the plaintiffs have failed to allege facts sufficient to establish the requisite intent for the tort of intentional infliction of emotional distress. Finally, the defendants claim that the plaintiffs' claims are precluded by Conn. Gen. Stat. § 19a-24.[1]
Because § 19a-24 is dispositive of the counts directed against Addiss, it is helpful to begin with the defendants claims with respect to that statute. Section 19a-24(b) provides that the Commissioner of Health Services shall not "be held personally liable in any civil action for damages . . . on account of any official act or omission of such commissioner." The term "official act" is not statutorily defined. In order to understand its meaning, it is helpful to consider the provisions of § 19a-24(a).
Section 19a-24(a) provides that, "Any claim for damages in excess of one thousand five hundred dollars on account of any official act or omission of the commissioner of health services . . . shall be brought as a civil action against the commissioner in [her] official capacit[y] and said commissioner shall be represented therein by the attorney general . . ." This statute "was intended by the legislature to apply to all civil actions against the commissioner of health . . . By its enactment the legislature has waived the sovereign immunity of the state in those cases to which the CT Page 942 statute applies." Duguay v. Hopkins, 191 Conn. 222,232, 464 A.2d 45 (1983).
"When the state waives sovereign immunity by statute, however, a party who wishes to sue under the legislative waiver must come clearly within its provisions . . ." Id. Section 19a-24(a) waives sovereign immunity with respect to "any official act or omission" of the commissioner, but § 19a-24(b) complements this waiver by providing that the commissioner shall not "be held personally liable in any civil action for damages . . . on account of any official act or omission of such commissioner." These provisions, taken together, are quite broad, and insulate the commissioner from personal liability for any official act or omission.
The construction of § 19a-24 raises questions quite different from those addressed in the line of federal civil rights cases that the plaintiffs invoke as precedent. The Supreme Court of the United States has held that state officials "acting in their official capacities" are outside the class of "persons" subject to liability under 42 U.S.C. § 1983, Will v. Michigan Departmentof State Police, 491 U.S. 58 (1989), but that state officials sued in their individual capacities are within this class, Hafner v. Melo, 112 S.Ct. 358 (1991). As I explained in Pechiney Corp. v. Crystal, 43 Conn. Sup. 91,106, 643 A.2d 319, 10 CONN. L. RPTR. 606 (1994), this line of cases stems from the famous ruling of Ex parteYoung, 209 U.S. 123 (1908), that state officials performing unconstitutional acts do so without the authority of the state and, consequently, have no immunity from the federal judicial power. This line of jurisprudence, important though it is, cannot sensibly be applied to § 19a-24
Section 19a-24 focuses not on the capacity in which the commissioner is sued but on the nature of the act she is alleged to have committed. If she is alleged to have committed "any official act or omission," she cannot be "held personally liable" regardless of the capacity in which she is sued. To put it another way, § 19a-24 limits the substantive liability of the commissioner, in both her official and personal capacities.
The concept of "official act" in § 19a-24 is a broad one.Black's Law Dictionary defines "official act" as "[o]ne CT Page 943 done by an officer in his official capacity under color and by virtue of his office." Black's Law Dictionary 1084 (6th ed. 1990). This broad definition of "official act" finds support in the judicial interpretation of that term in two different contexts. The federal bribery statute,18 U.S.C. § 201(b)(1), makes it a crime to offer anything of value to a public official "to influence any official act." The Supreme Court has long held that "[e]very action that is within the range of official duty comes within the purview of these sections." United States v. Birdsall, 233 U.S. 223,230 (1914). A separate line of cases involves a long established principle of the common law that sureties on a sheriff's bond are liable for injuries resulting from the "official act" of the sheriff or his deputy. The Supreme Judicial Court of Massachusetts explained in an influential opinion that "an official act does not mean what the deputy might lawfully do in the execution of his office; if so, no action would ever lie against the sheriff for the misconduct of his deputy. It means therefore whatever is done under colour or by virtue of his office." Knowltonv. Bartlett, 18 Mass. (1 Pick.) 271, 274 (1822). See Abbottv. Cooper, 23 P.2d 1027, 1030 (Cal. 1933).
The phrase "official act" in § 19a-24 should be construed with similar expansiveness. It must be remembered that § 19a-24(a) provides a benefit to injured persons by waiving the sovereign immunity of the state when those persons are injured by "any official act or omission" of the Commissioner of Health Services. In return for this benefit, § 19a-24(b) exacts the price that the commissioner shall not "be held personally liable" for the same "official act." In this context, "official act" plainly means an act (or omission) done under color of or by virtue of the Commissioner's office.
Given this standard, the defendants' motion to strike the counts against Addiss must be granted. All of the acts and omissions that the plaintiffs claim that she performed, or failed to perform, were done under color of or by virtue of her office. The entire complaint against her is directed to her performance (or nonperformance) of her official duties. She consequently cannot be held personally liable in this civil action for damages. CT Page 944
Section 19a-24 is not, however, dispositive of the claims against Peck. Section 19a-24(b) pertains to the Commissioner of Health Services herself. Section 19a-24(c) pertains to employees and staff members of the commissioner. Subsection (c), unlike subsection (b) grants immunity only for "any official act or omission not wanton or willful." An allegation of "recklessness," such as the one against Peck in count 52, is an allegation of a "wanton" act. "Reckless" and "wanton" are essentially synonymous. Black's Law Dictionary, supra, at 1582. See Ziman v. Whitley, 110 Conn. 108, 110, 147 A. 370
(1929). In addition, the claim of intentional infliction of emotional distress against Peck in count 54 by its nature alleges a "willful" act. Consequently, § 19a-24 does not preclude the allegations against Peck. For this reason, the defendants' first two claims must now be considered insofar as those claims concern the counts directed against Peck.
The defendants' first claim, that the plaintiffs have failed to allege that Peck owed them a duty, occupies the bulk of their brief, but can be disposed of quite summarily here. The plaintiffs allege that Peck was grossly negligent. "The existence of a duty of care is an essential element of negligence." Coburn v. Lenox Homes. Inc.,186 Conn. 370, 375, 441 A.2d 620 (1982). "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." Id. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised." Orlo v. Connecticut Co., 128 Conn. 231, 237,21 A.2d 402 (1941). These are fact-driven considerations. In this case, only the issue of Peck's liability in his personal capacity is before me, and the statutory authority cited by the defendants is not alone dispositive of this issue. At this stage, I am obliged to construe the facts in the light most favorable to the plaintiffs. NovametrixMedical Systems, Inc. v. BOC Group. Inc., 224 Conn. 210,215, 618 A.2d 25 (1992). The question of duty presented here cannot be resolved in favor of Peck on a motion to strike. CT Page 945
The defendants' second claim, that the plaintiffs have failed to allege facts sufficient to establish the requisite intent for the tort of intentional infliction of emotional distress, must also be rejected. The plaintiffs specifically allege intent to inflict emotional distress. See count 54 ¶ 27. The defendants may not find this allegation credible, but such credibility can hardly be tested on a motion to strike, where the plaintiffs' allegations must be assumed to be true. The motion to strike the counts against Peck must, consequently be denied.
In conclusion, the motion to strike is granted as to counts 45 and 47 and denied as to counts 52 and 54.