[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to terminate the parental rights of Rose F. and Robert F. filed by the Commissioner of the Department of Children and Families (hereinafter Petitioner) on February 23, 1996. In the petition it is alleged that the parents of Robert F. (hereinafter Robert), who has been previously adjudicated to be a neglected child, have abandoned the child in the sense that they have failed to maintain a reasonable degree of interest, concern or responsibility as to his welfare; that they have failed to achieve such [a] degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in his life; that, as to mother, the child has been denied by reason of her act or acts of commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being; and finally that there is no ongoing parent-child relationship with respect to the parents as defined by law.
Mother, Rose F., consented to the termination of her parental rights and the court accepted her consent, after a canvas, on June 14, 1996. The two-day trial on the termination of the parental rights of Robert F., (hereinafter respondent), began July 1, 1996 and concluded July 8, 1996. The court heard testimony from Ms. Betty Gorman, social worker for the Petitioner, Ms. Linda D., foster mother, and Dr. Bruce Freedman, psychologist. CT Page 5916
After trial the court, from the testimony and exhibits, finds the following facts.
Robert was born January 26, 1993, to Rose F. and the respondent. By June 20, 1994, when the Petitioner received the first referral involving Robert, Rose F. and the respondent, who were married to each other, had separated. The referral involved physical abuse to Robert, believed to have been caused by Rose F.'s live in boyfriend. A 96 hour hold was invoked pursuant to then C.G.S. § 17a-10(e) on June 20, 1994, and Robert was taken to Windham Memorial Hospital where examination revealed numerous cuts, bruises, scabs and scratches on his body. On June 22, 1994, x-rays confirmed Robert had also suffered a fractured ulna and the orthopedic surgeon who treated him concluded that the injuries were consistent with child abuse.
On June 24, 1994, the Petitioner sought and obtained an order of temporary custody of Robert pursuant to C.G.S. §46b-129(b)(2). On August 16, 1994, the respondent was defaulted for failure to appear at a neglect hearing and with mother's consent, Robert was committed to the Petitioner as a neglected child for up to eighteen months pursuant to then C.G.S. §46b-129(d).
On March 30, 1995, the Petitioner filed a termination of parental rights petition. The respondent was incarcerated at the time. He had been located by the Petitioner in December of 1994 while hospitalized in Hartford under the name of Robert Young, an alias he had been using when incarcerated in May of 1994. Upon his release from the hospital he was returned to a correctional facility where he remained until his release in June of 1995. He then renewed his relationship with Rose F.
On June 20, 1995, the court ordered a psychological evaluation of mother, the respondent and Robert. On September 28, 1995, the Petitioner withdrew the petition because the court appointed evaluator, Dr. Bruce Freedman, recommended that the respondent and Rose F. be allowed additional time to work towards reunification with Robert. On October 2, 1995, the respondent and Rose F. signed a service agreement containing written expectations of conduct required for reunification with Robert.
On October 30, 1995, an instructor at a parenting class reported that members of the class witnessed the respondent throwing Rose F. against her car in the parking lot. The police CT Page 5917 were contacted. The next day Rose F. left the respondent because the respondent threatened her and broke the door in the apartment. They were still separated at the time the petition was filed. As a result of the parking lot incident the respondent was denied admission to group parenting classes, but was permitted to attend one-on-one sessions instead.
On December 15, 1995, the commitment of Robert to the Petitioner was extended pursuant to P.A. 95-238 § 4. At that time the respondent had attended only two parenting classes and three counselling sessions since signing the service agreement on October 2, 1995. On February 23, 1996 this petition was filed. Additional findings of fact involving events before and after filing of the petition and to the date of trial are found in subsequent paragraphs of this memorandum.
Public Act 95-238 § 3(a) provides for the filing of a petition to terminate parental rights by the Petitioner.
Termination of parental rights has been defined as the complete severance by court order of the legal relationship between child and parent. C.G.S. § 17a-93(e). The court, after determining that the Department of Children and Families has made reasonable effort to reunify the child with the parent, must first determine whether the proof at trial provides clear and convincing evidence that any pleaded grounds exist to determine a parent's rights as of the date of the filing of the petition or as of the date of the last amendment. P.A. 95-238 § 3(b). In re Emmanuel M., 43 Conn. Sup. 108, 111, aff'd35 Conn. App. 276 (1994) cert. den. 231 Conn. 915 (1994). If grounds are found to terminate parental rights, applying the requisite standard of proof, the court must then consider whether the facts as of the last day of trial establish, by clear and convincing evidence, after consideration of the factors enumerated in P.A. 95-238 § 3(d), that termination is in the child's best interest. In re Emmanuel M., Id., at 111.
Each statutory basis for termination set out in P.A. 95-238 § 3(b) is an independent ground for termination. In reEmmanuel M., Id, at 127; citing In re Baby Girl B., 224 Conn. 263
(1992).
As to the respondent the Petitioner has alleged three separate grounds for termination listed as they appear in P.A. 95-238 § 3(b). They are: CT Page 5918
 (1) [t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child such parent could assume a responsible position in the life of the child; . . . ; and (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child.
The Petitioner in this case avers that the respondent has abandoned his child for the following reasons:
The respondent did not see Robert nor did the respondent inquire about him between January 8, 1994 and August 22, 1995. He was incarcerated many times between May 1994 and June 21, 1995. When located by the Petitioner in December of 1994 he was in jail under an alias, Robert Young. When released he missed visits, didn't send cards or gifts on birthdays and failed to attend education planning sessions. The Petitioner also claims he has not supported the child.
The court finds that although released in June of 1995 the respondent was not allowed to see Robert, who has been in foster care since June 20, 1994, until Dr. Freedman's report was completed in August, 1995. Between August of 1995 and the date of the petition a weekly schedule of visitation was established for the respondent. He appeared more than fifty (50%) per cent of the time, although sometimes tardy. He has not sent birthday cards or presents, although he has given Robert socks and two Christmas outfits of clothing. Since his release from jail and to the date of the petition he has resided at a local YMCA, with his mother in an apartment, and, again at the YMCA. Transportation is a problem for him. He has not provided support for Robert; he has been unemployed since his release due to an unspecified CT Page 5919 disability for which he may receive some income. He presently resides in a convalescent home. He has stated that when he becomes ready to care for the child he would like the Petitioner to help him in locating an apartment.
For more than one year after Robert was placed in foster care, the respondent was unable to see him because he was incarcerated. That alone does not constitute abandonment. In reShannon S., 41 Conn. Sup 145 (1987). Since his release he has visited the child at the office of the Petitioner on a fairly regular basis when considered in the light of his living arrangements and lack of transportation. It is not clear nor is the court convinced that the respondent has abandoned his child in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. See In re Rayna M., 13 Conn. App. 23 (1987).
Next the Petitioner alleges that the respondent, being the parent of a child who has been found by the court to have been neglected, has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and need of the child such parent could assume a responsible position in the life of the child. In support of this claim the Petitioner avers that Robert has been in foster care since June 20, 1994 while the father has been given every chance to reunify. He has failed to take advantage of parenting classes and counselling offered pursuant to a service agreement. Further, the Petitioner says that according to Dr. Freedman, the respondent's personality problems are such that he is unlikely to change in the future.
The court finds that the respondent, according to the court appointed psychologist, Dr. Bruce Freedman, in his original evaluation dated August 14, 1995,[1] shows minimal parenting skills. He did not seem inclined to perform what he considered to be women's work, which the evaluator inferred meant housekeeping and child care. Dr. Freedman believed that with extensive help the respondent might be able to provide at least some parenting for Robert, although he would never be able to be the sole custodian for Robert. (Emphasis supplied.)
Robert at three and one-half is a special needs child in that he is developmentally delayed, by approximately one year. According to his foster mother he has emotional problems stemming from abuse while in his mother's care. His foster mother. Ms. CT Page 5920 Davenport, testified that, at first, he had terrible "night terrors". He still wears diapers; he has language difficulties and started special education classes when he turned three. He needs a routine, lots of patience and will need counselling, Ms. Davenport reported.
The respondent failed to comply with the service agreement of October 2, 1995 relative to counselling and parenting classes. His assaultive behavior toward mother in late October of 1995 caused her to separate from him.
The concluding paragraph of Dr. Freedman's evaluation of August 14, 1995 states:
 "If the parents continued to show problems or failed to work substantially on meeting their expectations, then termination of parental rights should be pursued in nine months. Without the two together, neither parent seemed likely to provide a solid enough foundation in which this child could overcome the result of past trauma, as well as meet the necessary conditions for healthy development."
The respondent did not meet his expectations; he and mother are no longer together. The Petitioner waited nearly nine months before starting the termination proceeding. The court finds, by clear and convincing evidence, that the respondent has failed to rehabilitate himself within the meaning of the statute and that he could not, within a reasonable time, assume a responsible position in the life of the child.
Lastly, the Petitioner argues that there is no ongoing parent-child relationship between the respondent and his child and that to allow further time for the relationship to develop would not be in the child's best interest. To support this claim the Petitioner points out that the child acts out before and after visits with father and never talks about him. He does not appear to have any desire to visit and separates easily at the conclusion of visits. Robert refers to his foster parents as "mommy" and "daddy" and is bonded to them. Further, Dr. Freedman, in his testimony, says that Robert is at a critical age and needs the security of being adopted by his foster parents.
The court finds that the evidence fully supports the factual claims of the Petitioner recited above regarding the lack of an on-going relationship between the respondent and Robert. CT Page 5921 Additionally, the court finds that mainly because of his incarceration, the respondent did not have contact with the child between January 8, 1994 and August 22, 1995. He has also missed several visitation opportunities between August of 1995 and the date of the petition. He has been late for eight visits. The lack of contact and visitation, while not conclusive evidence of abandonment, certainly impacts upon the on-going relationship with Robert. When Dr. Freedman evaluated the respondent and Robert on April 19, 1996 he found that no bond existed between father and son. He felt that the son did not like his father and that Robert's psychological attachment was with his foster mother. He said that the child needed a secure home. Dr. Freedman was asked at the trial if the respondent could establish a relationship with his child within a reasonable time and answered "no".
Accordingly, the court finds by clear and convincing evidence that there is no ongoing relationship as defined in P.A. 95-238 § 3(b)(4) and, to allow further time for the establishment of such parent-child relationship would be detrimental to the best interest of Robert.
As to this ground and the failure to rehabilitate ground, the court finds they have existed over an extended period of time which is greater than one year. The court further finds that the Department of Children and Families has made reasonable efforts to reunify the child with the parent.
The court now considers, pursuant to P.A. 95-238 § 3(d), whether termination is in the best interest of Robert. The court must make this finding by clear and convincing evidence. In reRomance M., 30 Conn. App. 839, 847048 (1993) appeal dismissed,229 Conn. 345 (1994). See also Practice Book § 1050.1(3).
1. The Department of Children and Families has offered appropriate and timely services for transportation of the child for visitation with the respondent and mother. It arranged counselling and parenting classes for the respondent that he did not complete.
2. The court finds the Department of Children and Families has made reasonable efforts to reunify the family pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980 as amended. Counselling and parenting classes were offered to the parents; visitation was arranged and the child was transported CT Page 5922 for visits with the respondent. In September of 1995 a prior termination proceeding was withdrawn to allow the parents time to reunify with Robert. A service agreement was executed with reunification in mind. Unfortunately the respondent did not fulfill the expectations found therein and the parents separated.
3. Regarding court orders, the court notes the service agreement recited above and its expectations regarding counselling and parenting classes. The respondent did not fulfill these expectations.
4. The child's feelings and emotional ties with father were fully considered by the court. Robert is clearly bonded with his foster parents. Dr. Freedman, the court-appointed psychologist, reports that Ms. Davenport, the foster mother, is the psychological parent to Robert. The foster parents desire to adopt Robert.
5. With respect to the age of Robert, he was three and one-half at the time of trial. Dr. Freedman reports in his evaluation of April 19, 1996, that Robert needs stability in his life.
6. With respect to the efforts the respondent has made to adjust his circumstances to make it in Robert's best interest to return to his home in the foreseeable future, the court finds that the respondent has had only limited contact with the child; he has not demonstrated the parenting abilities in the past or now to deal with Robert's special needs. The respondent presently resides in a convalescent home. Further delay would not, in Dr. Freedman's opinion, be appropriate.
7. With respect to any barrier which may have reasonably or unreasonably been placed in the path of the respondent to prevent a meaningful relationship with Robert, the court finds that the Department of Children and Families has meet its obligations to the respondent by offering services to him. The respondent has not been prevented from maintaining a meaningful relationship with the child by anyone or by economic circumstances.
ORDER
Having considered the foregoing facts, it is found by clear and convincing evidence to be in the best interest of Robert to terminate the parental rights of the respondent so that the child CT Page 5923 may be placed in adoption, or that other permanent planning be accomplished without further delay. It is therefore ordered that the parental rights of Robert F. be and they hereby are terminated. It is further ordered that the Petitioner be appointed the statutory parent for the purpose of placing the child forthwith in adoption and to report to this court in writing as to the progress toward that end no later than ninety days from the date of this judgment. If adoption has not been finalized within six months from the date of the judgment, the Petitioner is further ordered to submit a motion to review a plan for terminated child no later than that date to ensure compliance with federal law which mandates judicial review of every child in the guardianship of this state at least every eighteen months.
APPEAL
The respondent has twenty days from the date of this judgment in which to take an appeal. If an appeal is requested and trial counsel is willing to continue representation, this court will appoint such attorney to act as appellate counsel, at public expense if the appellant is indigent, until all appellate process is completed. Practice Book § 4017. If, however, in the exercise of professional judgment as an officer of the Superior Court, the attorney declines to perfect such appeal because, in the attorney's opinion, it lacks merit, such attorney is not required to do so but may instead simultaneously file a timely motion to withdraw and another motion to extend the appellate period to the full maximum of forty days as permitted by law. Practice Book § 4040. Such motions, if unopposed, will be granted ex parte and a new attorney appointed to review this record and make an independent determination of the merits of such appeal. If the second attorney determines it lacks merit, the reason for this opinion shall be promptly submitted to the court in writing. The party seeking the appeal will then be informed by the Court Services Officer of the Clerk of the balance of the forty days in which to secure counsel for the purpose of taking such appeal, who may, if qualified, be appointed by the court to be compensated by the state Douglas v.California, 372 U.S. 353 (1963); Fredericks v. Reinke, 152 Conn. 501
(1964).
Dated at Windham, Connecticut this 27th day of August, 1996.
Potter, J. CT Page 5924