## JEFFREY P. ZIZKA ET AL. *v.* WATER POLLUTION CONTROL AUTHORITY OF THE TOWN OF WINDHAM ET AL.
### (11783)

PETERS, C. J., HEALEY, PARSKEY, SHEA and HADDEN, Js.

Argued January 10—decision released April 16, 1985

*James A. Wade,* with whom was *Stephen E. Goldman,* for the appellants (plaintiffs).

*Howard B. Schiller,* with whom, on the brief, was *Louis D. Ferreri,* for the appellees (defendants).

PARSKEY, J. The plaintiffs brought an action in the Superior Court seeking a judgment declaring that the formula utilized by the water pollution control authority of the town of Windham (hereinafter the defend-

ant) for sewer assessment violated the plaintiffs' rights to equal protection and due process of law under the federal constitution. They alleged that such violations were actionable under 42 U.S.C. § 1983[1] (Federal Civil Rights Act of 1871) and also claimed compensatory and punitive damages, injunctive relief and attorney's fees. The trial court, on the defendant's motion, dismissed the action and the plaintiffs have appealed. We find no error.

To understand this case requires a brief excursion into its procedural history. In September, 1980, the defendant, pursuant to General Statutes § 7-249,[2]

---

[1] "[42 U.S.C.] § 1983. CIVIL ACTION FOR DEPRIVATION OF RIGHTS.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[2] "[General Statutes] Sec. 7-249. ASSESSMENT OF BENEFITS. At any time after a municipality, by its water pollution control authority, has acquired or constructed, a sewerage system or portion thereof, the water pollution control authority may levy benefit assessments upon the lands and buildings in the municipality which, in its judgment, are especially benefited thereby, whether they abut on such sewerage system or not, and upon the owners of such land and buildings, according to such rule as the water pollution control authority adopts, subject to the right of appeal as hereinafter provided. Benefits to buildings or structures constructed or expanded after the initial assessment may be assessed as if the new or expanded buildings or structures had existed at the time of the initial assessment. Such benefits and benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land on the last completed grand list of the municipality in which such land is located, pursuant to the provisions of sections 12-107a to 12-107e, inclusive, shall not be assessed until such construction or expansion or development is approved or occurs. In case of a property so zoned or classified which exceeds by more than one hundred per cent the size of the smallest lot permitted in the lowest density residential zone allowed under zoning regulations or, in the case of a town having no zoning regulations, a lot size of one acre in area and one hundred fifty feet

levied a sewer benefit assessment against owners of real estate within the sewer district. In October, 1980, the plaintiffs, owners of such real estate, brought an action against the defendant in three counts. *(Zizka I)* In the first count, an administrative appeal under the

---

in frontage, assessment of such excess land shall be deferred until such time as such excess land shall be built upon or a building permit issued therefor or until approval of a subdivision plan of such excess property by the planning commission having jurisdiction, whichever event occurs first at which time assessment may be made as provided herein. No lien securing payment shall be filed until the property is assessed. The sum of initial and subsequent assessments shall not exceed the special benefit accruing to the property. Such assessment may include a proportionate share of the cost of any part of the sewerage system, including the cost of preliminary studies and surveys, detailed working plans and specifications, acquiring necessary land or property or any interest therein, damage awards, construction costs, interest charges during construction, legal and other fees, or any other expense incidental to the completion of the work. The water pollution control authority may divide the total territory to be benefited by a sewerage system into districts and may levy assessments against the property benefited in each district separately. In assessing benefits against property in any district the water pollution control authority may add to the cost of the part of the sewerage system located in the district a proportionate share of the cost of any part of the sewerage system located outside the district but deemed by the water pollution control authority to be necessary or desirable for the operation of the part of the system within the district. In assessing benefits and apportioning the amount to be raised thereby among the properties benefited, the water pollution control authority may give consideration to the area, frontage, grand list valuation and to present or permitted use or classification of benefited properties and to any other relevant factors. The water pollution control authority may make reasonable allowances in the case of properties having a frontage on more than one street and whenever for any reason the particular situation of any property requires an allowance. Revenue from the assessment of benefits shall be used solely for the acquisition or construction of the sewerage system providing such benefits or for the payment of principal of and interest on bonds or notes issued to finance such acquisition or construction. No assessment shall be made against any property in excess of the special benefit to accrue to such property. The water pollution control authority shall place a caveat on the land records in each instance where assessment of benefits to anticipated development of land zoned for other than business, commercial or industrial purposes or land classified as farm land, forest land or open space land has been deferred."

provisions of § 7-250,[3] the plaintiffs sought to represent the class of residential real estate owners in the district subject to the assessment. In this count the plaintiffs challenged the assessment as manifestly excessive and the formula utilized by the defendant as violative of the statute. In the second count the plaintiffs challenged the assessment formula on state and federal constitutional grounds. In the third count the plaintiffs alleged that the assessment formula denied

---

[3] "[General Statutes] Sec. 7-250. PUBLIC HEARING. APPEAL. No assessment shall be made until after a public hearing before the water pollution control authority at which the owner of the property to be assessed shall have an opportunity to be heard concerning the proposed assessment. Notice of the time, place and purpose of such hearing shall be published at least ten days before the date thereof in a newspaper having a general circulation in the municipality, and a copy of such notice shall be mailed to the owner of any property to be affected thereby at such owner's address as shown in the last-completed grand list of the municipality or at any later address of which the water pollution control authority may have knowledge. A copy of the proposed assessment shall be on file in the office of the clerk of the municipality and available for inspection by the public for at least ten days before the date of such hearing. When the water pollution control authority has determined the amount of the assessment to be levied, it shall file a copy thereof in the office of the clerk of the municipality. Not later than five days after such filing, it shall cause a copy of such assessment to be published in a newspaper having a general circulation in the municipality, and it shall mail a copy of such assessment to the owner of any property to be affected thereby at such owner's address as shown in the last-completed grand list of the municipality or at any later address of which the water pollution control authority may have knowledge. Such publication and mailing shall state the date on which such assessment was filed and that any appeals from such assessment must be taken within twenty-one days after such filing. Any person aggrieved by any assessment may appeal to the superior court for the judicial district wherein the property is located and shall bring any such appeal to a return day of said court not less than twelve nor more than thirty days after service thereof and such appeal shall be privileged in respect to its assignment for trial. Said court may appoint a state referee to appraise the benefits to such property and to make a report of his doings to the court. The judgment of said court, either confirming or altering such assessment, shall be final. No such appeal shall stay proceedings for the collection of the particular assessment upon which the appeal is predicated but the appellant shall be reimbursed for any overpayments made if, as a result of such appeal, his assessment is reduced."

the plaintiffs equal protection of the law and due process of law under the provisions of the fifth and fourteenth amendments to the constitution of the United States and that such violations were actionable under 42 U.S.C. § 1983. The plaintiffs claimed compensatory and punitive damages under the provisions of § 1983, a declaratory judgment that the formula used violated both the state and federal constitutions, injunctive relief, attorney's fees and such other and further relief as the court deemed appropriate.

The court, *Dannehy, J.,* dismissed the action on jurisdictional grounds. The first count was dismissed on the grounds that § 7-250 does not authorize pursuit of an administrative appeal as a class action, nor does it permit the court to hear a § 1983 claim as part of such appeal. The second and third counts were dismissed on the grounds that since an administrative appeal under § 7-250 is the exclusive method of challenging sewer assessments, the court lacked jurisdiction to hear an attack on such assessments in a collateral proceeding, and further that the court lacked jurisdiction under 28 U.S.C. § 1341 to hear a § 1983 claim against the imposition of a state or local tax.[4] The plaintiffs appealed the dismissal to this court. We dismissed the appeal and subsequently denied the plaintiffs' petition for certification.[5]

The trial court dismissed the present action on the ground that the court's dismissal of the plaintiffs' earlier § 1983 action on jurisdictional grounds was res judicata. Although the trial court may well have been correct on the merits of its res judicata analysis; see

---

[4] "[28 U.S.C.] § 1341. The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

[5] The plaintiffs have not pursued the administrative appeal, nor have they asserted any constitutional basis on which the administrative appeal could be reinstated either in this court or in the trial court. At oral argument the plaintiffs conceded that the administrative appeal is dead.

1 Restatement (Second), Judgments § 12, comment c; there is a procedural wrinkle which makes it necessary for us to rest our decision on other grounds. A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court. Practice Book § 142. The grounds which may be asserted in this motion are: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) improper venue; (4) insufficiency of process; and (5) insufficiency of service of process. Practice Book § 143. Res judicata is not included among the permissible grounds on which to base a motion to dismiss. Res judicata with respect to a jurisdictional issue does not itself raise a jurisdictional question. It merely alleges that the court has previously decided a jurisdictional question and therefore must be asserted as a special defense. Practice Book § 164. It may not be raised by a motion to dismiss. *Salem Park, Inc.* v. *Salem,* 149 Conn. 141, 144, 176 A.2d 571 (1961); *Fetzer* v. *Miscoe Spring Water Co.,* 141 Conn. 364, 366, 106 A.2d 149 (1954). Of course, there is no reason why, in an appropriate case, once the defense of res judicata has been raised the issue may not be resolved by way of summary judgment. *Jensen* v. *Nationwide Mutual Ins. Co.,* 158 Conn. 251, 259, 259 A.2d 598 (1969).

Turning away from the reasoning of *Zizka I* as a basis for affirming the decision in *Zizka II,* we next consider whether the judgment in *Zizka II* may rest on its own bottom. This is a § 1983 claim. State courts have concurrent jurisdiction with federal courts over § 1983 claims. *Maine* v. *Thiboutot,* 448 U.S. 1, 3 n.1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980); *Fetterman* v. *University of Connecticut,* 192 Conn. 539, 549, 473 A.2d 1176 (1984). The scope of a § 1983 action in state court depends in part upon the nature of the relief that is

sought. In this case, the plaintiffs sought injunctive, declaratory and monetary relief. We must analyze these claims separately.

Insofar as the plaintiffs claim that they are entitled to an injunction, their § 1983 claim is barred, as we recently held in *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 691, 485 A.2d 1272 (1984), if they had an adequate remedy at law. The plaintiffs had such a remedy available to them under General Statutes § 7-250, which provides that no assessment shall be made until after a public hearing before the water pollution control authority, at which the owner of the property to be assessed shall have an opportunity to be heard concerning the proposed assessment. It provides for notice of such a hearing both by publication and by mailing to the owners of property to be affected. It provides further for the filing with the clerk of the municipality and for publication of the amount of the assessment determined by the water pollution control authority, and the mailing of a copy of such determination to affected property owners. It also affords an aggrieved owner the right to appeal such assessment to the Superior Court within twenty-one days of the filing with a municipal clerk. The court may then appoint a state referee to appraise the benefits and make a report of his doings to the court. If the appeal produces a reduction in the assessment, the owner is entitled to be reimbursed for his overpayment. The plaintiffs' claim for injunctive relief must fail in light of the remedial relief provided under § 7-250.

The plaintiffs' claims for declaratory and monetary relief under § 1983 must be reconciled with the Federal Anti-Injunction Act; 28 U.S.C. § 1341; which provides that: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Sev-

eral questions need to be resolved concerning the applicability of § 1341 to the plaintiffs' suit: (1) Is § 1341 limited to claims for injunctive relief?; (2) Is a local sewer assessment a "tax under State law?"; (3) Does § 1341 operate as a constraint on state courts as well as on federal district courts?; and (4) If not, does § 1341 nevertheless have implications for state court § 1983 challenges to state tax collections?

The jurisdictional barrier that § 1341 creates for federal courts when there is a plain, speedy and efficient remedy in the state courts does not depend upon the form of relief that the plaintiff seeks. Section 1341 applies whether the claim is for injunctive relief; *Rosewell* v. *LaSalle National Bank,* 450 U.S. 503, 512, 101 S. Ct. 1221, 67 L. Ed. 2d 464 (1981); or for damages. *Fair Assessment in Real Estate Assn.* v. *McNary,* 454 U.S. 100, 113, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981). The policy of § 1341 therefore applies to the plaintiffs' claims for declaratory and monetary relief.

The state action that the plaintiffs challenge falls within the rubric of a state tax. A sewer assessment, although not formally denominated a "tax," involves the taxing power of the state. *Group Assisting Sewer* v. *Ansonia,* 448 F. Sup. 45, 46 (D. Conn. 1978); *Katz* v. *West Hartford,* 191 Conn. 594, 602, 469 A.2d 410 (1983); *Vaill* v. *Sewer Commission,* 168 Conn. 514, 517, 362 A.2d 885 (1975).

The extent to which § 1341 bars actions in state courts is less well defined. Although there is authority for the proposition that a state court hearing a § 1983 claim has no greater jurisdiction than a federal court would have; *State Tax Commission* v. *Fondren,* 387 So. 2d 712, 723 (Miss. 1980), cert. denied sub nom. *Redd* v. *Lambert,* 450 U.S. 1040, 101 S. Ct. 1757, 68 L. Ed. 2d 237 (1981); we believe that the better view is that § 1341 does not deprive state courts of all jurisdiction

to hear § 1983 challenges to state taxes. Section 1341 is rooted in principles of federalism. It reflects the policy that federal courts should not interfere with the collection of state taxes. The logical implication from federalism is that state courts should themselves determine the adequacy of state remedies for claims contesting state taxes.

Although § 1341 does not operate as a jurisdictional barrier in state courts, it nonetheless points the way to the proper standard by which state tax challenges should be measured. In a § 1983 suit seeking relief from the collection of state taxes, we may impose limitations that, like those of § 1341, inquire into whether the claimants have been afforded a statutory remedy that is "plain, speedy and efficient." The federal court has held that § 7-250 is, for federal purposes, a plain, speedy and efficient remedy under § 1341; *Group Assisting Sewer* v. *Ansonia,* supra, 48; we likewise conclude that § 7-250 furnishes a remedy that forecloses the plaintiffs' § 1983 claims in this action in state court. Since the General Assembly has fashioned an exclusive adequate remedial system for challenging excessive sewer assessments; *Vaill* v. *Sewer Commission,* supra, 519; we see no need to subject state tax collectors to state actions brought under § 1983.[6] See *Backus* v. *Chilivis,* 236 Ga. 500, 505, 224 S.E.2d 370 (1976). The bringing of a § 1983 action under these circumstances raises a jurisdictional question. *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979). The trial court was, therefore, correct in concluding that it lacked jurisdiction to entertain the present law suit.

---

[6] We leave open the possibility that cases may arise in the future, where, because of the nature of the constitutional violations alleged, General Statutes § 7-250 would not provide a "plain, speedy and efficient remedy."

There is no error.

In this opinion PETERS, C. J., HEALEY and HADDEN, Js., concurred.

SHEA, J., concurring. I agree with the result and the opinion except for the part concluding that a prior determination of a jurisdictional issue cannot be made the basis of a motion to dismiss under Practice Book § 142.

The ground for dismissal was lack of jurisdiction over the subject matter as permitted by Practice Book § 143 (1). There is nothing in the Practice Book that precludes a party from relying upon a prior final determination of the same jurisdictional issue to establish this ground. We have frequently said that jurisdiction must be determined whenever and however it is raised before the merits of a cause can be adjudicated. *Aaron v. Conservation Commission,* 178 Conn. 173, 178, 422 A.2d 290 (1979); *Valley Cable Vision, Inc. v. Public Utilities Commission,* 175 Conn. 30, 32, 392 A.2d 485 (1978). "[W]henever a question of lack of jurisdiction is brought to the attention of the court, that issue must be decided before any further action is taken, and the issue of jurisdiction must be disposed of regardless of the form of the motion." *Salamandra v. Kozlowski,* 173 Conn. 136, 139, 376 A.2d 1103 (1977). It is quite inconsistent with that heretofore unquestioned principle to hold that a claim of res judicata going to subject matter jurisdiction must await the appropriate time for summary judgment, which requires the closing of the pleadings with attendant discovery proceedings, upon all the other issues in a case before it can be resolved. Practice Book § 379.

I would find, nevertheless, that the dismissal of the earlier action does not act as a bar to the fresh consideration of the jurisdictional issue that the court has

undertaken, because the present action is significantly different from the earlier one and the prior determination did not resolve the jurisdictional issues now raised. The gist of the previous determination is contained in the following sentence of the memorandum of decision in the first action: "But, after all that can be said on this subject, it must finally come to this, that this court lacks jurisdiction to hear and determine a 42 U.S.C. Sec. 1983 claim as part of a statutory appeal under Connecticut General Statutes, Sec. 7-250; and that this court lacks jurisdiction to award equitable relief on the basis of 42 U.S.C. Sec. 1983 where no such remedy is available under State law."

The present action does not join a § 1983 claim with a statutory appeal; nor does a determination that "this court lacks jurisdiction to award equitable relief" under § 1983 resolve the issue of whether damages may be available under that statute as now claimed. Those issues were not within the scope of the judgment dismissing the prior suit and, therefore, neither res judicata nor collateral estoppel is applicable. See *Slattery* v. *Maykut,* 176 Conn. 147, 159, 405 A.2d 76 (1978).