[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS (#111)
 I. BACKGROUND
On October 18, 1999, the plaintiff, Ronald Johnson, filed a five count complaint[1] against the defendants, Pfizer, Inc., Sordoni/Skanski, Inc., The Stanley Works Inc., Brokk, A.B. and North American Sales, Inc., arising out of injuries that the plaintiff sustained while employed by the Manafort Brothers Inc. as an equipment operator, performing work at Pfizer.[2]
According to the plaintiff's complaint, he was performing overhead demolition work at Pfizer, using a Brokk 250 machine which was fitted with a "LaBounty" attachment. This attachment made it possible for the plaintiff to cut overhead steam lines and metal pipes. While he was using said machine, the wishbone section of a sprinkler head broke loose, fell on to the plaintiff and became imbedded in the plaintiff's neck. As a result, the plaintiff has suffered and will continue to suffer substantial physical injuries and financial expenses.
Counts one and two, brought against Pfizer and Sordoni/Skanski respectfully, sound in negligence. Counts three through five, brought against The Stanley Works Inc., Brokk, A.B. and North American Sales, Inc. respectfully, sound in products liability and are brought pursuant to General Statutes § 52-572n. For purposes of the present motion, only the claim brought against the defendant, Brokk, is relevant. As a matter of course, all references to "the defendant" herein refer to the defendant, Brokk, only.
The defendant, Brokk, is a Swedish Company engaged in the manufacture, sale and distribution of construction equipment. According to the plaintiff's complaint, Brokk regularly transacts business in the United States and sells equipment to companies transacting business in the State of Connecticut. According to the sheriff's return, service of the writ, summons and complaint were made on this defendant by mail, return receipt, on October CT Page 3006 1, 1999. The defendant acknowledges receipt of said writ, summons and complaint on October 6, 1999.
On December 1, 1999, this defendant filed a motion to dismiss the plaintiff's complaint on the ground of insufficiency of service of process. In addition to a memorandum of law filed in support of its motion to dismiss, the defendant also filed the affidavit of Martin Johansson, Managing Director of Brokk. The plaintiff filed an objection to the defendant's motion to dismiss on December 29, 1999 and a memorandum of law in support.
 II. DISCUSSION
"It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford, 247 Conn. 407,410-11, 722 A.2d 271 (1998). "The motion to dismiss shall be used to assert . . . insufficiency of service of process." Practice Book 10-31; Zizka v. Water Pollution Control Authority,195 Conn. 682, 687, 490 A.2d 509 (1985). "One who is not served with process does not have the status of a party to the proceeding. . . . A court has no jurisdiction over persons who have not been made parties to the action before it." (Internal quotation marks omitted.) Delio v. Earth Garden Florist, Inc., 28 Conn. App. 73,77, 609 A.2d 1057 (1992).
The defendant moves to dismiss the plaintiff's complaint on the ground of insufficiency of service of process. Specifically, the defendant alleges that on October 6, 1999, it received a copy of the complaint by registered mail typed in English, rather than the country's native language of Swedish. The defendant contends that the plaintiff's attempt of service of process on this defendant in this manner is directly contrary to the requirements of service of process according to the Convention of the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter "the Convention").[3]
Both the United States and Sweden are signatories to the Convention. According to the Convention, international service of process may be made only by the prescribed manner provided, unless a specific country otherwise objects and authorizes an alternate method for service of process. See Articles 2-6. CT Page 3007 Specifically, Article 5 provides: "The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either —
(a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
(b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.
Subject to sub-paragraph (b) of the first paragraph of this article, the document may always be served by delivery to an addressee who accepts it voluntarily.
If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.
That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document."
Pursuant to Article 5, the defendant contends that the plaintiff did not comply with the Convention when it purported to serve Brokk with process in English. Thus, the defendant contends that said process was insufficient, and urges this court to grant its motion to dismiss.
In opposition, the plaintiff contends that although it may not have complied with the service of process provisions of Article 5, it has properly served the defendant with service of process pursuant to the provisions of Article 10. Specifically, Article 10(a) provides: "Provided the State of destination does not object, the present Convention shall not interfere with — . . . (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, . . ."
"The Hague Convention is a multilateral treaty which creates a uniform method for service of documents between nationals of different countries. . . . `[O]ne of the two stated objectives of the [Hague Convention] is to create appropriate means to CT Page 3008 ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.'" Leandres v. Mazda Motor Corp. , Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 351600 (November 12, 1999, Melville, J.), quoting VolkswagenwerkAktiengesellschaft v. Schlunk, 486 U.S. 694, 702-03,708 S.Ct. 2104, 100 L.Ed.2d 722 (1988). "The Convention `was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad.'" Robillard v. Asahi Chemical Industry Co., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 539213 (November 7, 1995, Corradino, J.), quotingVolkswagenwerk Aktiengesellschaft v. Schlunk, supra, 698. It is undisputed that the Hague Convention controls when service of process is made abroad. See Volkswagenwerk Aktiengesellschaft v.Schlunk, supra, 698-99.
Signatories to the Convention permit service pursuant to Article 5 and 10, unless they otherwise object. "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. . . . Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state of by a method designated by the requester and compatible with that law. . . . A state may also consent to methods of service within its boundaries other than a request to its central authority [pursuant to Articles 8-10]." Id. Thus, "[w]hile Article 10 authorizes service by mail, such service is entirely contingent upon the receiving state consenting to such service." Buitekant v. Zotos International, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 135874 (October 12, 1994, Mottolese, J.) (12 Conn. L. Rptr. 557, 558).
In the present matter, there is nothing to indicate that Sweden objected to service of process pursuant to Article 10(a).[4]
This omission can be interpreted to mean either that Sweden consents to direct service by mail, or that Article 10(a) does not refer to formal service, such that there was no reason for Sweden to object. See Downes v. Ryobi America Corp. , Superior Court, judicial district of Danbury, Docket No. 311959 (March 12, 1993, Fuller, J.); see also McClenon v. Nissan Motor Corp. inU.S.A., 726 F. Sup; 822, 825 (N.D.Fla. 1989). CT Page 3009
Two distinct lines of interpretation concerning Article 10(a) have arisen and a split has developed among the federal courts. Some courts have concluded that service of judicial process by direct mail is permitted under Article 10(a). See e.g.,Ackermann v. Levine, 788 F.2d 830 (2d Cir. 1986); Patty v. ToyotaMotor Corp. , 777 F. Sup. 956 (N.D.Ga. 1991); Meyers v. ASICSCorp. , 711 F. Sup. 1001 (C.D.Cal. 1989); Hammond v. Honda MotorCo., Ltd., 128 F.R.D. 638 (D.S.C. 1989); Smith v. DainichiKinzoku Kogyo Co., Ltd., 680 F. Sup. 847 (W.D.Tex. 1988); NewportComponents v. NEC Home Electronics, 671 F. Sup. 1525 (C.D.Cal. 1987); Lemme v. Wine of Janan Import, Inc., 631 F. Sup. 456
(E.D.N.Y. 1986); Weight v. Heavy Industries, Ltd., 597 F. Sup. 1082
(E.D.Va. 1984); Chrysler Corp. v. General Motors Corp. ,589 F. Sup. 1182 (D.D.C. 1984). Looking to the express language of Article 10(a), these courts have concluded that the Convention's reference to "the freedom to send judicial documents by postal channels, directly to persons abroad" would be superfluous unless it was related to the sending of such documents for the purpose of service. See Ackermann v. Levine, supra, 788 F.2d 839. Some courts have also attributed the use of the word "send" instead of "service" in Article 10(a) to "careless draftsmanship" rather than an intent on the part of the drafters to draw a distinction between judicial documents sent through the mails for the purpose of service and those sent for other purposes. See Id., 839-40;Knapp v. Yamaha Motor Corp. U.S.A., 60 F. Sup.2d 566, 570
(S.D.Va. 1999).
Other federal courts have adopted a more rigid interpretation of Article 10(a) which permits service of process only to be made via the designated Central Authority, as noted in Article 5, or through other diplomatic channels. See Bankston v. ToyotaMotor Corp. , 889 F.2d 172 (8th Cir. 1989); Pennebaker v. KawaskiMotors Corp. , U.S.A., 155 F.R.D. 153 (S.D.Miss. 1994); Anbe v.Kikuchi, 141 F.R.D. 498 (D.Haw. 1992); Fleming v. Yamaha MotorCorp., USA, 774 F. Sup. 992 (W.D.Va. 1991); Wadsen v. Yamaha MotorCo., Ltd., 131 F.R.D. 206 (M.D.Fla. 1990); McClenon v. NissanMotor Corporation in U.S.A., supra, 726 F. Sup. 825; Hantover,Inc. v. Omet, S.N.C. of Volentieri C., 688 F. Sup. 1377 (W.D.Mo. 1988), Prost v. Honda Motor Co., Ltd., 122 F.R.D. 215 (E.D.Mo. 1987); Pochop v. Toyota Motor Co., Ltd., 111 F.R.D. 464
(S.D.Miss. 1986); Mommsen v. Toro Co., 108 F.R.D. 444 (S.D.Iowa 1985). These courts have adopted the rationale that if the drafters of the Convention had intended Article 10(a) to provide an additional means of service of process, then the drafters CT Page 3010 would have specified "service" rather than permitting parties to "send" judicial documents through the mail. See Bankston v.Toyota Motor Corp. , supra, 889 F.2d 173-74.
There is no appellate authority on this mater in Connecticut.[5] The judges of the superior court have, however, consistently aligned themselves with the latter line of cases, which hold that "[Article] 10(a) merely provides a method for sending subsequent documents after service of process has been obtained." (Internal quotation marks omitted.) Cavendish-Pell v.Howell, Superior Court, judicial district of Stamford/Norwalk at Stamford (December 16, 1995, Lewis, J.) (service in the United Kingdom); Downes v. Ryobi America Corp. , Superior Court, judicial district of Danbury, Docket No. 311959 (March 12, 1993, Fuller,J.) (service in Japan); Bourquin v. Melsungen, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 346322 (September 13, 1988, Hennessey, J.) (3 C.S.C.R. 803) (service in Germany); Cardillo v. KIS France, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 084909 (October 22, 1987, Cioffi, J.) (2 C.S.C.R. 11 88) (service in France); Montalvo v. Nutmeg Foods, Superior Court, judicial district of Bridgeport, Docket No. 226591 (June 24, 1987,Harrigan, J.) (2 C.S.C.R. 760) (service in Italy).
This court aligns itself with the prior Connecticut trial court decisions and concludes that Article 10(a) does not permit service of process to be sent by mail. Rather, in order to comply with the requirements of the Convention, it is necessary to follow the provisions of Article 5 in order to effect proper service of process. As previously stated, Article 5 requires service of process to be made upon the Central Authority as designated by the receiving nation or by a method designated by the requester and compatible with that law. See Article 5; see also Volkswagenwerk Aktiengesellschaft v. Schlunk, supra,486 U.S. 698-99. Additionally, the text must be translated into the native language of the receiving country. Neither steps were taken in the present case.
Accordingly, the defendant's motion to dismiss is granted since the plaintiff did not comply with the provisions of the Convention regarding extrajudicial service of process.
D. Michael Hurley, Judge Trial Referee