[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' AMENDED MOTION TO DISMISS DATED JANUARY 10, 2002 THE FOURTH, FIFTH, NINTH, TENTH AND ELEVENTH COUNTS OF PLAINTIFF'S COMPLAINT
FACTS
On November 17, 1998, twenty-eight year old Bryant Wiseman, the plaintiff's decedent (hereinafter also "Bryant") died while incarcerated at the Garner Correctional Institution of the State of Connecticut. Bryant was mentally ill, and at the time of his death he had been diagnosed as suffering from paranoid schizophrenia. It is alleged by the plaintiff, inter alia, that the Department of Correction's doctors, nurses and other medical workers failed to provide adequate and proper medical care, supervision and medication to him, allowed his mental illness to go untreated and inadequately treated and they permitted him to become paranoid and aggressive under circumstances that they knew would lead to violent confrontations with other inmates and correctional staff. It is also alleged that on November 17, 1999 that after several days during which his doctors intentionally withheld required anti-psychotic medication, Bryant's untreated mental illness caused him to become paranoid and disruptive as a result of which he was subsequently violently subdued and restrained by more than eight correctional officers and other Department staff. It is further alleged that these actions by the eight correctional officers and other Department staff led to Bryant's death. It is further alleged that Bryant's injuries and death were due to a profound lack of training in how to properly manage and restrain mentally ill inmates.
It is further alleged that seven months before Bryant was killed, another young mentally ill man, Timothy Perry, was killed by two lieutenants and a number of guards under similar circumstances while in custody at another facility of the Department of Correction.
This action was brought by the plaintiff as Administrator of her son's CT Page 2905-bz Estate. The defendants then filed a Motion to Dismiss Counts Four, Five, Nine, Ten and Eleven.
 STANDARD OF REVIEW
A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court. Zish v. Water Pollution Control Authority,195 Conn. 682, 687 (1985). "A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter law and fact state a cause of action that should be heard by the court." State Medical Society v. Board of Examiners inPodiatry, 203 Conn. 295, 298 (1987). Whenever a court lacks jurisdiction over the subject matter, the court shall dismiss the action. Connecticut Practice Book § 10-33.
 ISSUES Fourth Count:
The Fourth Count claims Deliberate Indifference to Safety Failure to Protect — Against the Perry Correctional Employee Defendants in Their Individual Capacities, Pursuant to 42 U.S.C. § 1983. In the Fourth Count the plaintiff alleges that defendants ANDRE CHOUINARD and WILLIAM SCOTT were lieutenants at the Connecticut Department of Correction who were responsible for the death of Timothy Perry (hereinafter also "Perry"). Defendants STEVEN SANELLI, JIMMY GUERRERO, JEFFREY HOWES, MAURELLIS POWELL, DENNIS CAMP, RAYMOND BRODEUR and MOISES PADILLA were correctional officers responsible for the death of Timothy Perry. Defendant ANNE MARIE STOREY was a nurse employed by the University of Connecticut Health Center who was also responsible for the death of Timothy Perry. These defendants are collectively referred to as the "Perry Correctional Employee Defendants." They are sued in their individual capacities.
The Fourth Count specifically alleges that at no point after Timothy Perry's death on April 12, 1999 and up until Bryant's death seven months later did any of the Perry Correctional Employee Defendants tell the full truth about how Timothy Perry was killed, and that they lied to investigators about their acts, omissions and responsibility, about their failure to properly restrain Mr. Perry and about their failure to summon urgently needed medical care for him. It is further alleged that by their intentional failure to honestly report the facts concerning their responsibility for Timothy Perry's death, these defendants hid information from Department of Correction's (hereinafter "DOC") officials and hindered and interfered with those officials' ability to prevent CT Page 2905-ba similar injuries and deaths in the future, including the death of the plaintiff's decedent Bryant. It is further alleged that these defendants intentionally failed to put DOC officials on notice of serious deficiencies in the DOC training of correctional officers to deal with mentally ill inmates and to safely restrain them. It is further alleged that these defendants knew: (a) that other correctional officers and medical workers had been improperly and inadequately trained to safely and properly restrain inmates, especially mentally ill inmates; (b) that other mentally ill inmates such as Bryant were in the custody of the DOC; (c) that correctional employees are frequently called upon to deal with and restrain mentally ill inmates in situations that require safe and proper techniques and that pose a risk of harm to the inmates; and (d) that the lack of training would inevitably lead to the injury and death of other inmates and mentally ill inmates such as Bryant. Finally, the plaintiff claims that these defendants' failure to tell the truth and to otherwise put DOC officials on notice of the urgent need to provide proper and adequate training to correctional employees as aforementioned proximately caused Bryant's injuries and death and violated his Fourth,Eighth andFourteenth Amendment rights under the United States Constitution.
Defendants have moved to dismiss this count claiming the gravamen of this count was the failure to tell the truth by the Perry Correctional Employee Defendants (hereinafter also "Perry Defendants"). However, a reading of the Fourth Count indicates that it was more than the Perry Defendants' alleged lying that is claimed; it is also claimed that by lying they intentionally failed to put Department officials on notice of serious deficiencies in the training of officers, and intentionally failed to put DOC officials on notice of the urgent need to provide proper and adequate training to correctional employees as alleged.
The plaintiff agrees that the plaintiff must allege personal injury fairly traceable to the defendants' allegedly unlawful conduct. Defendants claim that this count should be dismissed because the Perry Defendants were not present at the time plaintiff suffered from any of the medical conditions and that they did not observe him to be suffering. Hicks v. Amstrong, 116 F. Sup.2d 287 (D. Conn 1999) rejected that argument stating that the law does not require that a defendant observe or be present at the time of a plaintiff's suffering.
Defendants also claim that the two lieutenants, Scott and Chouinard, failed to remedy the profound lack of training and the severe and imminent risk of harm to mentally ill prisoners such as Bryant after being informed of it, allowed the continuance of a policy and custom of improper restraints and the use of excessive force against mentally ill CT Page 2905-bb prisoners; and exhibited deliberate indifference to Bryant's rights by failing to act on information indicating that unconstitutional acts were occurring in the DOC. Plaintiff cites Provost v. City of Newberg,262 F.3d 146, 151, 154 (2nd Cir. 2001) and Merritt v. Hawk,153 F. Sup.2d 1216, 1227-28 (D.Co. 2001) for the proposition that lieutenants are supervisory employees for purposes of this analysis. This overlooks CGS § 18-81 which gives the Commissioner of Correction the ultimate responsibility for training, which he can delegate and which he has delegated, but not to either of these two lieutenants. Therefore, the claims that the lieutenants were in a supervisory capacity are not valid.
All of the above notwithstanding, this Court believes that defendants' claim of lack of standing by the plaintiff has merit. Fundamental to that issue is whether or not any of the Perry Defendants owed a duty to the plaintiff. It is true that they owed a duty to tell the truth under DOC Regulations, but that duty was to their superiors, not an outside party. It is too much of a leap to say that the Perry Defendants owed a duty to other inmates, including Bryant, to tell the truth, to not hinder any investigation of the Perry death, to not interfere with DOC officials' ability to prevent similar injuries and deaths in the future and to advise DOC officials of serious deficiences in the DOC training. These duties may well be owed to their superiors at the DOC, but it is a real stretch for this Court to conclude that these duties were owed to other inmates similarly situated as Bryant and to Bryant. If there is no duty owed to Bryant, then the plaintiff Administrator of his Estate does not have standing to sue the Perry Defendants.
Accordingly, the Fourth Count against the Perry Defendants is dismissed.
 Fifth Count:
Defendants have moved to dismiss the Fifth Count which is solely against defendants John Amstrong, Commissioner of Correction, and Jack Tokarz, Deputy Commissioner of Correction. The main claim of the defendants is that the Fifth Count is the same as the Sixth, Seventh and Eighth Counts. However, the Court finds that there are differences. The Fifth Count specifically alleges that these defendants encouraged DOC employees to look the other way and to remain silent when excessive force is used against inmates in the correctional system; the Sixth Count says nothing about "looking the other way" or to "remain silent" but instead essentially claims that these two defendants were responsible for inadequate training of the DOC employees; the Seventh Count simply alleges that the Wiseman Correctional Employee Defendants (not John CT Page 2905-bc Armstrong and Jack Tokarz), those who were employed at Garner Correctional (see paragraph 20 of Complaint) when Bryant was killed used excessive force against Bryant; and the Eighth Count is again against Armstrong and Tokarz claiming that they permitted and/or encouraged use of excessive force against inmates and were deliberately indifferent in supervising and training the subordinates who participated in the use of excessive force against Bryant.
Accordingly, since there is proper standing by the plaintiff in Counts Five, Six, Seven and Eight, and all counts are different to some degree, the Motion to Dismiss Count Five is denied.
 Ninth, Tenth and Eleventh Counts:
Defendants' claims in these three counts are that the Patients' Bill of Rights does not apply to correctional institutions. The Patients' Bill of Rights are codified in CGS § 17a-540 through CGS § 17a-550.
Defendants' first claim is that Section 17a-541 states in pertinent part:
 "No patient hospitalized or treated in any public or private facility for the treatment of persons with psychiatric disabilities shall be deprived of any personal property or civil rights . . ."
(Emphasis added).
Defendants claim that the word "facility" does not include a correctional institution. However, under CGS § 17a-540 (a) facility is defined as:
 "`Facility' means any inpatient or out-patient hospital, clinic, or other facility for the diagnosis, observation or treatment of persons with psychiatric disabilities." The key words here are found in "or other facility."
Defendants make much of legislative history for these statutes. However, it is well-settled law that when a statute is clear on its face, there is no need to resort to legislative history. Here, the Court finds that "other facility" is broad enough to include the facilities of the Department of Correction. This is clear on its face.
Secondly, there is no question that correctional facilities do engage in the diagnosis, observation and treatment of persons with psychiatric disabilities. As a matter of fact as provided by plaintiff's counsel by CT Page 2905-bd letter of February 19, 2003, the Court has been able to view an excerpt from the State of Connecticut Office of Policy and Management 2001-2003 Budget. On page 3 it states in pertinent part:
 "The Garner Correctional Institution serves as the agency's primary psychiatric care facility for offenders requiring long-term, acute, brief and emergency mental health treatment."
(Emphasis added.)
The State itself has clearly marked Garner Correctional Institution at which Bryant was killed as a "facility for the diagnosis, observation or treatment of persons with psychiatric disabilities," which is within the meaning of the Patients' Bill of Rights as aforesaid.
Finally, defendants claim that certain sections of the Patients' Bill of Rights cannot apply to the prisoners, including Bryant and give as an example CGS § 17a-541 which prohibits deprivation of any personal property or civil rights, including the right to vote, hold or convey property, and enter into contracts. Further, the Patients' Bill of Rights gives telephone and mail privileges which are not allowed to inmates of a correctional institution.
It is well-settled law that inmates of correctional institutions are entitled to all rights under the United States Constitution. However, this Court has had the opportunity to hear habeas corpus petitions in the Hartford Judicial District since March 2000, as both counsel know, and is well aware that constitutional rights and statutes for inmates may be violated if they are found to be for a legitimate penalogical interest.[1] Therefore, there is nothing illegal in prohibiting inmates from the privileges of the right to vote, unlimited mail and telephone rights, etc. as aforementioned because they serve a legitimate penalogical interest. However, that does not invalidate the other portions of a Patients' Bill of Rights which do apply to inmates.
Accordingly, the Motion to Dismiss the Ninth, Tenth and Eleventh Counts is denied.
Defendants also claim that plaintiff failed to allege any facts suggesting defendants JOUGHLIN, MALDONADO or HOFFER acted willfully, wantonly or recklessly. However, defendants overlook paragraph 95 of the Complaint which states: "The individually named defendants in this Complaint each acted with reckless or callous indifference to Bryant Wiseman's dignity as a human being and to his constitutional and CT Page 2905-be statutory rights." Paragraphs 28 through 50 of the Complaint, do in this Court's opinion, set forth facts that can easily be considered reckless. Accordingly, this claim of defendants is rejected.
 CONCLUSION
For the foregoing reasons, the motion to dismiss the Fourth Count is granted, and the motion to dismiss the Fifth, Ninth, Tenth and Eleventh Counts is denied.
Rittenband, JTR